Annie B. PATTERSON,
Plaintiff-Appellant,

v.

Otis R. BOWEN, Secretary of Health
and Human Services,
Defendant-Appellee.

No. 85–3750.

United States Court of Appeals,
Eleventh Circuit.

Sept. 22, 1986.

Alice K. Nelson, Tampa, Fla., for plaintiff-appellant.

Peter B. Loewenberg, Asst. U.S. Atty., Tampa, Fla., for defendant-appellee.

Before VANCE and ANDERSON, Circuit Judges, and PITTMAN *, Senior District Judge.

ANDERSON, Circuit Judge:

Annie Patterson appeals from a district court order affirming the final decision of the Secretary of Health and Human Services denying her application for supplemental security income and disability insurance

* Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

benefits.[1] Because the ALJ's finding that prior to January 1981, Patterson could perform her past work as a janitor is supported by substantial evidence, we affirm the Secretary's denial of disability benefits for the period from September 1980 to January 1981. However, because the ALJ mechanically applied the age grids with respect to the period from January 1981 to May 1983,[2] we reverse the district court's order and remand to the district court with instructions to remand the case to the Secretary for further proceedings consistent with this opinion. We also conclude that Patterson is not precluded from receiving disability benefits by 20 C.F.R. § 404.1530 (1986).

## I. BACKGROUND

In October 1981, Patterson applied for supplemental security income and disability insurance benefits, alleging onset of disability in September 1980 because of diabetes mellitus, left carpal tunnel syndrome, an umbilical hernia, chronic bladder infections, a partially amputated right index finger, and possible cataracts. She was born on May 14, 1933, and was forty-nine years old at the time of the hearing. She has a tenth grade education and past relevant work experience as a janitor.

In February 1978, Patterson was first diagnosed as having an umbilical hernia. In April 1978, Dr. A. Mouradian treated her for headaches, shortness of breath, and urinary frequency, nocturia, and urgency. He noted that she had been hypertensive in the past, and diagnosed probable hypertensive cardiovascular disease. He also indicated that her diabetes, which she had had for seven years, was not under control, and that she had peptic ulcer syndrome. Finally, he observed that she had exogenous obesity and that there were cardiac irregularities on the electrocardiogram ("EKG"), including sinus tachycardia, non-specific ST–T wave changes, and low voltage.

In November 1978, Patterson was hospitalized after she developed gangrene of the distal portion of her right index finger. The right index finger was partially amputated. An EKG indicated that there were minor non-specific ST–T wave changes, but Dr. R.T. Bramson diagnosed no active cardiopulmonary disease.

In September 1979, she was hospitalized with complaints of urinary problems and an abnormal episode of menstrual bleeding. She was diagnosed as having leiomyomata of the uterus with pelvic inflammatory disease, and a total abdominal hysterectomy with bilateral salpingo-oophorectomy was performed.

In January 1981, Patterson complained of some discomfort in her left hand, and by late February 1981, she was diagnosed as having probable carpal tunnel syndrome in her left hand. In April 1981, she was scheduled for surgery to release her left carpal tunnel syndrome, but the surgery was cancelled because her diabetes was not under control.

In July 1981, she was hospitalized for a biopsy of her bladder. The examination revealed that she had some chronic pyelonephritis, but the biopsy did not reveal any malignancies.

In November 1981, Patterson was examined by Dr. George Adams, a consulting physician. His examination revealed that her left carpal tunnel syndrome was accompanied by marked atrophy of the thenar eminence and a "marked decreased grip and decreased dexterity of the fingers and an inability to grasp well or to oppose the thumb against the tips of the digits." Record on Appeal, vol. 2 at 128. He also noted that while her diabetes had produced

---

1. For the purpose of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits, and we therefore treat the two claims together. *See Smith v. Bowen,* 792 F.2d 1547, 1548 n. 1 (11th Cir.1986).

2. In April 1983, Patterson's right leg was amputated below the knee, and she was awarded disability benefits in May 1983. In this appeal, Patterson challenges only the denial of benefits for the period before May 1983.

neovascularity in her eyes, there was no retinopathy to any advanced degree. He also indicated that there was a decreased sensation to pinprick on the soles of both feet, but there were no superficial variocosities or marked evidence of any chronic venous insufficiency. Finally, he noted that although she has an umbilical hernia, there are normal bowel sounds and there is neither any rebound tenderness nor any evidence of strangulation.

In October and December 1981, Patterson was scheduled for surgery to relieve her left carpal syndrome. However, the October surgery was cancelled due to the failure of the anesthesia to work, and the December surgery was cancelled because of her diabetic condition.

In January 1982, Patterson complained of constant pain in her left hand, and a volar splint and wrist corset were prescribed. In May 1982, she was once again hospitalized because she had been suffering a headache and chest pain for three weeks. The EKG revealed sinus tachycardia and minor T wave changes, but she was not diagnosed as suffering from any "acute" cardiovascular disease. Record on Appeal, vol. 2 at 427.

At the hearing, Patterson testified that she works as a babysitter for her three year-old grand-niece on a daily basis for approximately eight hours per day. She also indicated that she does her own housework, shops for groceries with her niece, and drives her car when necessary.

The ALJ found that Patterson was not disabled within the meaning of the Social Security Act. The ALJ first found that she suffered from the following impairments: poorly controlled diabetes mellitus; chronic urinary tract infections and pyelonephritis; an umbilical hernia without complications; left carpal tunnel syndrome; partial amputation of the distal right index finger; mild hypertension; and marked exogenous obesity. The ALJ, however, determined that her impairments, whether considered individually or in combination, did not meet or equal any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (1986). The ALJ then found that prior to January 1981, Patter-

son's impairments either in combination or individually did not preclude her from performing her past relevant work as an industrial maid. With respect to the period after January 1981, the ALJ concluded that her left carpal tunnel syndrome precluded her from performing her past work, but found that she retained the residual functional capacity to perform light and sedentary work and was therefore not disabled. The ALJ noted that while the left carpal tunnel syndrome limited grip strength and dexterity in her left hand, it did not prevent her from performing a wide range of jobs at the light and sedentary exertional levels.

The ALJ also suggested that even if he found that Patterson were disabled, she would still not be entitled to benefits "because of her disregard for prescribed medical treatment expected to improve her functional capacity." Record on Appeal, vol. 2 at 21. The ALJ, however, did not make an express finding that she should be denied benefits because of her noncompliance with prescribed medical treatment.

The Appeals Council denied Patterson's request for review, and she filed suit in the United States District Court for the Middle District of Florida. Relying on *Reeves v. Heckler*, 734 F.2d 519 (11th Cir.1984), the magistrate concluded that the ALJ had applied the age grids in a mechanical fashion, and therefore gave Patterson an opportunity to make a proffer of evidence on her ability to adapt. In her proffer, Patterson stated that her ability to adapt to a new work environment is less than the level established under the grids for persons her age because of her limited education and work experience, her inability to lift or carry any weight with her left hand, and her physical condition. After considering this proffer and the record, the magistrate recommended that the Secretary's finding of no disability be affirmed since the Secretary's decision was supported by substantial evidence and since Patterson's proffer did not show that her "ability to adapt to a new work environment is less than the level established under the grids for persons who are [her] age." Record on Appeal, vol. 1, doc. 32 at 10. The magistrate

also concluded that even if she were disabled, she would not be entitled to disability benefits because she had failed, without good cause, to follow the diet prescribed as part of her medical treatment. After reviewing the record, the district court adopted the magistrate's recommendation and affirmed the Secretary's denial of benefits. This appeal ensued.

## II. DISCUSSION

Patterson raises two principal contentions on appeal.[3] First, she argues that the proffer of evidence on the question of whether her ability to adapt to a new work environment was less than that presumed under the grids for a person her age was sufficient to require a remand to the Secretary on this question. Second, she contends that since she did not refuse to follow prescribed medical treatment, 20 C.F.R. § 404.1530 (1986) does not preclude her from receiving disability benefits.

Before turning to Patterson's first contention, we note that she is not entitled to disability benefits for the period from September 1980 to January 1981. The ALJ found that prior to January 1981, Patterson had not met her burden of showing that she could not perform her past relevant work as a janitor, and this finding is amply supported by the record. For example, Patterson's hypertension was mild, and her diabetes, though poorly controlled, had not resulted in any significant complications. In addition, her umbilical hernia was easily reducible, and there was no evidence of any strangulation or rebound tenderness. The partial amputation of her right index finger had also not significantly affected her ability to use her right hand. In fact, she had continued to work as a maid for several months after the amputation. Thus, Patterson is not entitled to disability benefits for the period before January 1981.

Turning to Patterson's first contention (the sufficiency of her proffer on the ability to adapt question), we conclude that she proffered substantial evidence which, if credited by the ALJ, would indicate that her ability to adapt to a new work environment was less than the level established under the grids for an individual her age. In a disability determination, a claimant has the initial burden of showing an impairment serious enough to prevent him from performing his past relevant work. *See, e.g., Reeves v. Heckler,* 734 F.2d 519, 525 (11th Cir.1984). If the claimant meets this burden, the burden then shifts to the Secretary to prove that the claimant can perform substantial gainful work activity which exists in the national economy. *See, e.g., Francis v. Heckler,* 749 F.2d 1562, 1566 (11th Cir.1985). The Secretary can often meet this burden by relying on the medical-vocational guidelines ("grids"), 20 C.F.R. pt. 404, subpt. P, app. 2 (1986). The grids are based on the claimant's residual functional capacity, age, education and work experience, and in cases where they apply, they direct a conclusion on the issue of whether the claimant is capable of performing substantial gainful work activity in the national economy. *See, e.g., Sryock v. Heckler,* 764 F.2d 834, 836 (11th Cir.1985).

However, in *Broz v. Schweiker,* 677 F.2d 1351 (11th Cir.1982), *vacated and remanded sub nom. Heckler v. Broz,* 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1983), *adhered to,* 711 F.2d 957 (11th Cir.), *modified,* 721 F.2d 1297 (11th Cir.1983), we held that the Secretary could not use the grids concerning age to establish conclusively a claimant's ability to adapt to a new work environment. 677 F.2d at 1360. In *Reeves,* we held that in cases where the ALJ has applied the age grids in a mechanical fashion, the claimant should be given an opportunity to make a proffer of evidence on his ability to adapt. 734 F.2d at 526. If the claimant "makes a proffer of substantial evidence that an ALJ could find credible and tending to show that the claimant's ability to adapt to a new work environment is less than the level established under the grids for persons his age," the district court is required to remand the case to the

---

3. Patterson also argues that the ALJ's finding of no disability with respect to the period from January 1981 to May 1983 is not supported by

substantial evidence. Because of our disposition of this case, we do not reach this question.

Secretary for reconsideration of the age/ability to adapt issue. *Id.* If, on the other hand, the claimant does not make such a proffer, the ALJ's mechanistic use of the age grids would be harmless error and there would be no need to remand to the Secretary. *Id.*

In the instant case, Patterson proffered several reasons why her ability to adapt to a new work environment is less than the level established under the grids for persons her age: (1) limited educational and work experience; (2) lack of the ability to lift or carry any weight with her left hand; and (3) her physical condition, including, *inter alia,* diminished grip strength and limited dexterity in her left hand as the result of carpal tunnel syndrome. The first two categories (her limited educational background and work experience and the restriction on her ability to lift and carry objects), however, do not relate to the question of whether her ability to adapt is less than that established by the grids for persons her age. Rather, this evidence would be relevant to the factors in the grid concerning a claimant's educational level, work experience and residual functional capaci-

ty.[4] Thus, we hold that a proffer of evidence relating to a claimant's education, work experience or residual functional capacity does not relate to the question of whether a claimant's ability to adapt to a new work environment is less than the level established under the grids for persons his age, and consequently does not require a remand to the Secretary.

With respect to the third category, we conclude that the evidence in her proffer concerning her physical condition is sufficient to require a remand to the Secretary on the question of whether her ability to adapt to a new environment is less than the level presumed under the grids for claimants her age.[5] At the time of the ALJ's decision, Patterson was 49. The ALJ found that she was a younger individual with a tenth grade education, was capable of performing a wide range of light and sedentary work, and was unskilled. Applying the grids, the ALJ found that she was not disabled. However, had she been 55 rather than 49, she would have been disabled under the grids. *Compare* 20 C.F.R. pt. 404, subpt. P, app. 2, rule 202.01 (1986)

---

4. Of course, evidence that is relevant to a claimant's residual functional capacity may also be relevant to the question of whether the claimant's ability to adapt to a new work environment is less than the level presumed under the grids for persons his age. For example, in the instant case, Patterson's left carpal tunnel syndrome was relevant both to her residual functional capacity since it limited her ability to lift and carry weights with her left hand. However, the same evidence is also relevant to the issue of her ability to adapt, since the diminished grip strength and restricted dexterity caused by left carpal tunnel syndrome suggests that she might experience more difficulty in adapting to a new job than would other claimants without these limitations. In the instant case, the ALJ considered the effect of her left carpal tunnel syndrome with respect to her residual functional capacity, but not with respect to the ability to adapt issue.

5. On appeal, the Secretary asserts that the evidence in the proffer concerning her physical impairments is not relevant to the question of whether Patterson's ability to adapt to a new work environment is less than the level established under the grids for a person her age. We reject this contention. As the Secretary's treatment of this issue indicates, a claimant's physi-

cal or mental impairments are clearly relevant to the claimant's ability to adapt:

> We acknowledge that there are no conclusive data which relate varying specific chronological ages to specific physiologically-based vocational limitations for performing jobs.... Although ages 45, 50, 55 and 60 may be considered by some as too sharply defined as points in a progression of increasing difficulties, the concept of adversity of the aging process for severely impaired persons approaching advanced or retirement age is not arbitrary.... [W]here age is critical to a decision, recognition is taken of increasing physiological deterioration in the senses, joints, eye-hand coordination, reflexes, thinking processes, etc., which diminish a severely impaired person's aptitude for new learning and adaptation to new jobs.

43 Fed.Reg. 55,349, 55,359 (1978); *see also Broz,* 677 F.2d at 1360. If the Secretary's position on appeal (that evidence of physical and mental impairments is irrelevant to the ability to adapt issue) were accepted, it is difficult to understand how a claimant could establish that his ability to adapt to a new job is less than that presumed under the grids for a person his age. Thus, we conclude that evidence of physical or mental impairments is relevant to the ability to adapt question.

(disabled), *with id.* rule 202.17 (not disabled). The evidence in the proffer about her physical condition, if credited by the ALJ, would constitute substantial evidence with respect to whether her ability to adapt to a new work environment is less than the level established under the grids for claimants her age. For example, Patterson had diabetes and her carpal tunnel syndrome had significantly limited her manual dexterity and grip strength in her left hand. This is evidence that she would experience more difficulty in adapting to a new job than would other claimants her age without such an impairment. Under these circumstances, we hold that Patterson has met her burden of producing substantial evidence with respect to whether her ability to adapt to a new work environment is less than the level established under the grids for claimants her age.

The Secretary contends on appeal that even if Patterson were disabled, she would still not be entitled to receive disability benefits because she has refused without good reason to follow medical treatment prescribed by her physician. We reject this contention.

 The regulations provide in relevant part:

§ 404.1530 Need to follow prescribed treatment.

(a) *What treatment you must follow.* In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.

(b) *When you do not follow prescribed treatment.* If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

(c) *Acceptable reasons for failure to follow prescribed treatment.* The following are examples of a good reason for not following treatment:

(1) The specific medical treatment is contrary to the established teaching and tenets of your religion.

(2) The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.

(3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.

(4) The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5) The treatment involves amputation of an extremity, or a major part of an extremity.

20 C.F.R. § 404.1530 (1986). In order to deny benefits under § 404.1530, the ALJ must find that if the claimant followed the prescribed treatment, his ability to work would be restored, and this finding must be supported by substantial evidence. *See, e.g., Teter v. Heckler,* 775 F.2d 1104, 1107 (10th Cir.1985); *Rousey v. Heckler,* 771 F.2d 1065, 1069 (7th Cir.1985); *Fraley v. Secretary of Health & Human Services,* 733 F.2d 437, 440 (6th Cir.1984); *cf. Jones v. Heckler,* 702 F.2d 950, 953 (11th Cir. 1983) (under predecessor to § 404.1530, the impairment must have been amenable to treatment that would restore the claimant's ability to work). In the instant case, the record is devoid of any evidence that if Patterson had adhered to her diet, she would have been able to return to work. In addition, it is not clear from the ALJ's opinion whether he was relying on Patterson's noncompliance with prescribed treatment as a ground for the denial of disability benefits. Under these circumstances, we refuse to uphold the denial of disability benefits on this ground.

## III. CONCLUSION

With respect to the period before January 1981, we hold that the ALJ's finding of no disability is supported by substantial evidence. With respect to the period from January 1981 to May 1983, we conclude that Patterson's proffer of evidence satisfied her burden of production on the question of whether her ability to adapt to a new work environment is less than the

level established under the grids for persons her age, and we therefore reverse the district court's order and remand to the district court with instructions to remand the case to the Secretary for further proceedings consistent with this opinion. We also hold that Patterson is not precluded from receiving disability benefits under 20 C.F.R. § 404.1530 (1986).

AFFIRMED in part, REVERSED in part, and REMANDED.