Evelyn Grace DAWKINS,
Plaintiff–Appellant,

v.

Otis R. BOWEN, Secretary of the Department of Health and Human Services, Defendant–Appellee.

No. 87–7340

United States Court of Appeals,
Eleventh Circuit.

July 8, 1988.

James Lloyd Wright, Dothan, Ala., for plaintiff-appellant.

John C. Bell, U.S. Atty., and Calvin Pryor, Asst. U.S. Atty., Montgomery, Ala., for defendant-appellee.

Before VANCE and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

VANCE, Circuit Judge:

Failure to follow prescribed medical treatment disqualifies a claimant from receiving supplemental security income ("SSI") benefits. The Secretary's regulations provide a list of acceptable reasons for failure to follow prescribed treatment. In this case we add to that list and hold that a claimant's inability to afford a prescribed medical treatment excuses noncompliance.

## I.

Appellant Evelyn Dawkins alleges that she is disabled and unable to work because of the combined effect of a legion of medical problems. She complains primarily of diabetes, high blood pressure, cardiovascular disease, arthritis, impaired vision, an enlarged ventral hernia and carpal tunnel syndrome of the left wrist,[1] all complicated by obesity. In 1980 these conditions forced her from her job as a short order cook in the Chism Truck Stop in Ozark, Alabama. Over the years appellant's doctors have confirmed these various conditions, but have stated that appellant's impairments are controllable with medication and proper diet.

On September 27, 1984 appellant applied for social security disability and supplemental security income benefits. The Secretary denied her application. Appellant then applied for and received on September 17, 1985 a hearing before an Administrative Law Judge. The ALJ found that appellant was not fully and currently insured under the special earnings requirements for disability insurance. *See* 20 C.F.R. §§ 404.101–.133. The ALJ also determined that appellant was not entitled to SSI disability benefits because her impairments were not severe enough to preclude her

from engaging in light work.[2] The district court affirmed the ALJ's denial of both claims.

## II.

### A.

■ In denying appellant SSI disability benefits, the ALJ relied primarily if not exclusively on evidence in the record and testimony at the hearing concerning appellant's noncompliance with prescribed medical treatment. Dr. Frank Crockett, who treated appellant from 1983 to 1985, examined appellant on June 19, 1984. He diagnosed a variety of ailments, many of which form the basis of her current application for benefits. Dr. Crockett reported that he recommended a gynecological examination "in regard to her continual bleeding.... She says she has been unable to afford medical follow up for this, but I feel that if she is eligible for any financial assistance medically this would clearly be helpful...." Dr. Crockett also reported:

I am not sure about the abdominal pain. A lot of this may be related to the huge ventral hernia that she has, which is one of the largest I have ever seen and may well cause problems down the road. I feel that she probably does need surgical correction of this, but again, she says her finances are her main problem. I do feel that if she could obtain assistance, she might could have some of these problems looked at, which are potentially remedial problems.

After waiting several months while appellant unsuccessfully sought insurance coverage, Dr. Robert Zumstein admitted appellant to the Dale County Hospital for corrective surgery.[3]

---

**1.** The carpal tunnel is a fibrous tissue tunnel at the wrist through which pass various nerves, tendons, veins and arteries. Carpal tunnel syndrome is an inflammatory condition that creates pressure on the carpal tunnel and can cause severe pain and disfunction of the hands.

**2.** There are no eligibility period requirements for SSI benefits. *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir.1985); *see* 20 C.F.R. § 416.330.

**3.** In his report, Dr. Zumstein noted that he was admitting appellant

to the hospital for an elective D & C [dilatation and curettage] for postmenopausal bleeding which has persisted now for several mos. The patient is disabled and has financial problems. Had delayed the D & C for awhile until she could obtain a Medicaid coverage, however she was unable to do so and was admitted for the procedure.

Dr. Zumstein's 1985 examination reports indicate that appellant was having difficulty complying with his medical and dietary prescriptions. On February 19 Dr. Zumstein reported that appellant had run out of some of her medication. On June 18 he noted that her compliance had been poor, and that he had given her "a rather stern lecture."

At the hearing before the ALJ, appellant testified that when she ran out of the professional samples of Normodyne Dr. Zumstein gave her to control her high blood pressure, she did not have the money to refill the bottles. Appellant explained that the reason for her inconsistency in taking the prescribed medicine was that she did not always have the money to buy it. She also testified that she could not afford to pay the thirty-five dollars she needed to have her eyes examined.

■ The regulations provide that refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. *See* 20 C.F.R. § 416.930(b). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987) (footnote omitted); *see Epps v. Harris*, 624 F.2d 1267, 1270 (5th Cir. 1980). In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir.1987); *Patterson v. Bowen*, 799 F.2d 1455, 1460 (11th Cir.1986). This finding must be supported by substan-

tial evidence. *Patterson*, 799 F.2d at 1460; *see Jones v. Heckler*, 702 F.2d 950, 953 (11th Cir.1983).

The regulations also list examples of good reasons for not following prescribed treatment.[4] Although appellant does not allege any of these exceptions as an excuse for noncompliance, she does argue that her inability to afford the prescribed treatment excuses her noncompliance.

We agree with every circuit that has considered the issue that poverty excuses noncompliance. *See, e.g., Lovelace*, 813 F.2d at 59 ("To a poor person, a medicine that he cannot afford to buy does not exist"); *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir.1986) (failure to follow prescribed treatment does not preclude reaching the conclusion that a claimant is disabled when the failure is justified by lack of funds); *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir.1986) ("the ALJ must consider a claimant's allegation that he has not sought treatment or used medications because of lack of finances"); *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir.1985) (inability to afford surgery does not constitute an unjustified refusal and does not preclude recovery of disability benefits). Thus while a remediable or controllable medical condition is generally not disabling, when a "claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir.1986) (footnote omitted).

In this case the ALJ explicitly noted appellant's noncompliance, but did not consider her poverty as a good excuse.[5] The

---

**4.** 20 C.F.R. § 416.930(c) provides:

*Acceptable reasons for failure to follow prescribed treatment.* The following are examples of a good reason for not following treatment:

(1) The specific medical treatment is contrary to the established teaching and tenets of your religion.

(2) The prescribed treatment would be cataract surgery for one eye when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.

(3) Surgery was previously performed with unsuccessful results and the same surgery is

again being recommended for the same impairment.

(4) The treatment because of its enormity (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5) The treatment involves amputation of an extremity, or a major part of an extremity.

**5.** There is no evidence in the record, and the ALJ did not find, that appellant's inability to afford her prescribed medical treatment was a result of her own voluntary action. We therefore do not address the effect of this possibility in this case.

problem with this case is that it is unclear from the ALJ's opinion whether or not he based his determination that appellant was not entitled to benefits on appellant's failure to follow prescribed medical treatment. Although the ALJ found that appellant's testimony was "inconsistent with the findings of her attending physicians," the only inconsistency identified by the ALJ involved noncompliance with prescribed treatment. The ALJ found:

> In the instant case, the medical evidence supports a conclusion that the claimant's diabetes mellitus and high blood pressure are amenable to adequate control on a chemotherapeutic regimen and dietary restrictions as prescribed by her treating physician. The record shows that the claimant's blood pressure becomes uncontrolled at times when she does not take her medication as prescribed, and she also has increased problems relating to her diabetes mellitus due to non-compliance. This non-compliance is clearly demonstrated in the progress notes of her treating physician, as discussed in the evaluation of the medical records.

Thus the ALJ's conclusion that appellant retains the residual capacity to return to work is inextricably tied to the finding of noncompliance. As we held in *Patterson*, "it is not clear from the ALJ's opinion whether he was relying on [the claimant's] noncompliance with prescribed treatment as a ground for the denial of disability benefits." 799 F.2d at 1460.[6]

We therefore must reverse the judgment of the district court and remand with instructions that the case be remanded to the Secretary for determination by the ALJ as to whether appellant is disabled, without reference to her failure to follow prescribed medical treatment. If the ALJ determines that appellant is disabled,[7] the ALJ must then determine whether or not appellant is in fact unable to afford the medicine and other treatment her doctors have prescribed.[8] If the ALJ finds that appellant is disabled and cannot afford the prescribed treatment, then she is excused from not complying and she is entitled to benefits.

### B.

In denying appellant disability insurance benefits, the ALJ determined that appellant was not fully and currently insured as required by the regulations. The ALJ determined that appellant was not eli-

---

6. The district court's memorandum opinion is not so ambiguous. The district court, in its affirmance of the ALJ, placed even greater emphasis on appellant's noncompliance. The district court noted Dr. Crockett's and Dr. Zumstein's opinions that appellant's medical problems were potentially remediable, provided appellant could obtain financial assistance. The district court concluded, however, that substantial evidence supported the ALJ's decision. The district court explained:

> Based upon the foregoing summary of the evidence, this Court is of the opinion that substantial evidence supports the ALJ's conclusion that the plaintiff retains the residual functional capacity to return to the same type of work she has participated in in the past, such as a dishwasher and a short order cook. Specifically, this Court is of the opinion that substantial evidence supports the ALJ's conclusion that plaintiff's hypertension and diabetes are "amenable to adequate control on a chemotherapeutic regimen and dietary restrictions as prescribed by her treating physician."
> ....
> Further, it is well established that a claimant has an affirmative duty to follow medical-

ly prescribed treatment.... Without good reason, a plaintiff who does not follow medically prescribed treatment is ineligible for benefits. ... This Court finds substantial evidence to support the ALJ's conclusion that the plaintiff was not totally compliant with Dr. Zumstein's prescribed medical treatment.

(Citations omitted.) Thus the district court, while invoking the proper standard of review of the ALJ's factual findings, committed explicitly the same legal error the ALJ committed implicitly.

7. We note that at the hearing, the vocational expert testified that if appellant's subjective pain testimony were credited, her described medical problems would preclude her from work. Thus if there are no reasons for discrediting appellant's testimony unrelated to her noncompliance, appellant would be disabled and entitled to benefits. *See Hale v. Bowen,* 831 F.2d 1007, 1011–12 (11th Cir.1987); *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986).

8. The burden of producing evidence concerning unjustified noncompliance is on the Secretary. *Preston v. Heckler,* 769 F.2d 988, 990 & n. * (4th Cir.1985).

gible for Title II disability insurance benefits because she did not possess sufficient quarters of coverage to satisfy the earnings requirements of the Social Security Act.

In order to qualify for disability insurance benefits, a claimant must achieve disability insured status. The regulations provide that to have disability insured status, a claimant (1) must be fully insured and (2) must satisfy the requirements of one of the four rules in 20 C.F.R. § 404.130. *See* 20 C.F.R. § 404.130(a). In this case, appellant has satisfied the first of these four rules, known as the "20/40" rule. *See id.* § 404.130(b). The ALJ determined, however, that appellant had not satisfied the fully insured requirement.

A claimant needs at least six but not more than forty quarters of coverage to be fully insured. *Id.* § 404.110(b)(1). The table in section 404.115 lists the exact number of quarters of coverage required for individuals, according to their date of birth. According to this table appellant needs a total of thirty-nine quarters of coverage. The ALJ, however, determined from appellant's earnings statements that appellant had posted only thirty-three quarters of coverage, six short of the thirty-nine required for fully insured status.

Appellant does not challenge these calculations.[9] Appellant does contend, however, that her allegation of June 1980 as the onset of disability enables her to qualify for benefits under 20 C.F.R. § 404.132(a). This regulation provides that for female claimants the period of "elapsed years" referred to in section 404.110(b), which is used to determine the required number of quarters of coverage, ends the year a claimant turns 62 or the year in which a claimant's period of disability begins. *See id.* § 404.132(a)(2)(i). Appellant then refers to section 404.110(b)(2), which provides that a claimant is "fully insured for old-age insurance benefits" if the claimant has one quarter of coverage for each calendar year

elapsing after 1950. Thus, appellant concludes, due to the onset of disability in 1980, only thirty years have elapsed after 1950, and appellant's thirty-three accrued quarters of coverage satisfies the requirement.

We reject this technical argument because it is based on an inaccurate reading of the regulations. Although section 404.132(a)(2), which cuts off the number of elapsed years at the onset of a disability, does refer to section 404.110(b), appellant erroneously refers to section 404.110(b)(2). This section uses the elapsed years concept to satisfy the fully insured requirement only with respect to old-age insurance benefits. Appellant has applied for disability insurance benefits, not old-age insurance benefits. The district court therefore correctly ruled that appellant cannot use section 404.132(a) to show that she was fully insured for purposes of disability benefits. The ALJ thus did not err in finding that appellant was not fully insured.

### III.

The district court's judgment affirming the ALJ's decision to deny appellant's claim for supplemental security income benefits is reversed and remanded. The district court's judgment affirming the ALJ's decision to deny appellant's claim for social security disability benefits is affirmed.

AFFIRMED in part, REVERSED in part, and REMANDED with instructions.

---

**9.** Appellant does argue, citing the appearance of the word "may" in 20 C.F.R. § 404.115(a), that the application of the table in section 404.115 is discretionary. Appellant does not, however, present any other method under the regulations for determining appellant's insured status for purposes of disability benefits.