12 F.3d 213
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John L. LISEE, Petitioner-Appellant,
v.
RAILROAD RETIREMENT BOARD, Respondent-Appellee.
 No. 92-4323.
 United States Court of Appeals, Sixth Circuit.
 Nov. 15, 1993.
 
 On Appeal from the Railroad Retirement Board; No. 3929.
 R.R. Retirement Bd.
 AFFIRMED.
 Before: KEITH, NELSON, AND RYAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Petitioner, John L. Lisee, appeals the Railroad Retirement Board's ("Board") denial of a disability annuity under Sec. 2(a)(1)(v) of the Railroad Retirement Act of 1974 ("Act"). 45 U.S.C. Sec. 231 et seq. Petitioner argues the Board's decision was not supported by substantial evidence and was based on errors of law. Specifically, Lisee claims he lacks the capacity to perform a full range of sedentary work. For the reasons stated below, we AFFIRM the Board's decision adopting the findings of the hearings officer.
 
 I.
 
 2
 John L. Lisee was born in 1944. He finished high school and later worked for the Port Huron and Detroit Railroad ("Railroad") from 1970 to 1984. In the fall of 1982, Lisee fell into a hole while working and injured his back. After his injury, he returned to work for around twenty days until the pain became too severe. In June 1983, to alleviate his pain, Lisee underwent a lumbar laminectomy to remove a herniated lumbosacral disc. After the surgery and an eight month recovery period, Lisee returned to work. After one week, Lisee found he could not perform his brakeman/conductor job because it involved heavy lifting and frequent bending. He has not worked for a railroad nor engaged in substantial gainful activity since July 1984.
 
 
 3
 In 1986, the Petitioner first applied for a disability annuity under the Act alleging he was injured while working as a railroad brakeman, continued to work for some time, and ultimately underwent laminectomy for the pain in his back, legs and buttocks. Lisee alleged he last worked regularly May 15, 1984 and became disabled May 16, 1984. The Bureau of Retirement Claims, the Board's initial adjudicating unit, denied Lisee's application finding that he was not precluded from all regular employment. Lisee did not appeal and this judgment became final.
 
 
 4
 There is no medical evidence from October 1986 to March 1989. In March 1989 Lisee visited Dr. S. Hossain complaining of numbness and a burning sensation in his lower extremities, particularly on his left side. Dr. Hossain referred Lisee to Dr. Mostafa S. Sadry, a neurologist. In 1989, Dr. Sadry examined Lisee and found he exhibited no muscle weakness, displayed a positive straight leg test of 85 degrees, showed a loss of sensation in his left lower back, and did not show a reflex in his left ankle. Sadry recommended X-rays of the spine. The X-rays showed "moderate degenerative disc space narrowing at L4-L5 and also L5-S1" with minimal arthritic changes at these levels. Dr. Sadry diagnosed lumbrosarcal radiculopathy. Later EMG and Nerve conduction studies were both positive and magnetic resonance imaging (MRI) indicated two herniated discs. One year later, based upon his previous examination, Dr. Sadry evaluated Lisee's residual functional capacity. Dr. Sadry found Lisee could not perform, even at a sedentary capacity, on the basis of eight hours a day, five days a week. Dr. Sadry recommended Lisee return to Dr. Kreis, his original orthopedic surgeon, but Lisee did not pursue this option.
 
 
 5
 On May 10, 1989, Lisee filed his second application for a disability annuity at which time the Board arranged for two consulting physician examinations. Dr. John Hughes and Dr. Bernard Krakauer later examined Lisee and filed reports with the Board.
 
 
 6
 Dr. Hughes found Lisee performed the straight leg raising test to 70 degrees with his left leg, noted range of motion abnormalities such as: Lisee could bend forward only 20 degrees and laterally 10 degrees on each side. Reflex, sensory and motor abnormalities included no reflex in his left ankle, diminished sensation in his left leg and foot, and weakness in his left foot muscles. Dr. Hughes also noted no tenderness in Lisee's back muscles, and he did not mention muscle spasms. Dr. Hughes stated that Lisee was not able to return to his former employment but gave no opinion as to sedentary work.
 
 
 7
 Dr. Krakauer found lumbar "stiffness," weakness in Lisee's left ankle and foot, slightly decreased muscle circumference of the left leg, and a "moderately positive" straight leg raising test. He did not perform lumbar or range of motion studies and did not mention muscle spasms. Dr. Krakauer found Lisee was permanently disabled in terms of his prior work activities as a brakeman and opined he had a "limited capacity to do sedentary work."
 
 
 8
 The Director of Retirement Claims denied Lisee's application first on August 24, 1989, and again, upon reconsideration, in February 1990. Lisee appealed this decision to the agency's Bureau of Hearings and Appeals in March. Three months later, Lisee received a hearing before hearings officer Franklin H. Streitfeld where Lisee was represented by counsel.
 
 
 9
 At the hearing, Lisee testified that prescriptions did not help his pain sufficiently to justify their use. Instead, Lisee testified that he takes over-the-counter pain medication three times a week, alternating between Tylenol, Advil, and aspirin. According to Lisee, he experiences muscle spasms, severe pain and other symptoms such as burning daily. Lisee further stated he spends approximately five hours each day lying on the floor to escape his pain. He explained that he did not return to his orthopedic surgeon, Dr. Kreis, because his earlier unsuccessful back surgery made him apprehensive of any further surgery.
 
 
 10
 At the time of the hearing, Lisee's activities included occasionally performing light housework, driving his wife one half mile to work each day, and walking two blocks a couple times a week. He rode 65 miles to attend the hearing.
 
 
 11
 On October 31, 1990, the hearings officer affirmed the denial of Lisee's claim. Hearings officer Streitfeld declined to consider any medical evidence from 1982-1986. Streitfeld stated that the earlier finding of not disabled rendered all evidence relied upon irrelevant to the new application because the denial was final and could not be reopened. Specifically, Streitfeld found Lisee was not disabled and retained the ability to perform a full range of sedentary work. He stated
 
 
 12
 Mr. Lisee's testimony about his subjective complaints and alleged restrictions is very greatly out of proportion to the medical evidence. There is a paucity of objective findings referable [sic] to the back, in particular, and no evidence of any abnormalities that could reasonably be expected to cause the extraordinary limitation of physical activity he claims.
 
 
 13
 Lisee appealed this decision to the three-member Railroad Retirement Board in December 1990 and on December 26, 1991, the Board unanimously affirmed the denial and adopted the findings of the hearings officer. Specifically, the Board found that Lisee did not have an impairment or combination of impairments preventing him from performing any regular employment, that his subjective allegations of pain were not credible, and that he could perform a full range of sedentary work. On December 17, 1992, Lisee filed a timely Petition for review by this Court.
 
 II.
 
 14
 Lisee argues the Board erred in finding him not disabled and denying a disability annuity. Specifically, he contends no substantial evidence supports the hearings officer's finding that he could perform a full range of sedentary work. First, Lisee makes two arguments that he meets the requirements of Appendix 1 and should have been found not disabled based on the medical evidence alone. In support of this contention, Lisee argues that the hearings officer should have considered medical evidence from 1982-1986, and that the evidence considered by the hearings officer established a finding of disabled under Appendix 1. Second, Lisee argues the hearings officer incorrectly discounted the opinions of his treating physicians and his allegations of disabling pain in finding he could perform a full range of sedentary work and, therefore, no substantial evidence supports this finding. We disagree and discuss each allegation of error below.
 
 A.
 
 15
 First we address whether the Board correctly found Lisee was not disabled based on the medical evidence alone. This Circuit considers the Railroad Retirement Act's standards and rules analogous to the disability provisions of the Social Security Act ("SSA"). Chandler v. U.S. Railroad Retirement Board, 713 F.2d 188, 190 (6th Cir.1983); Crenshaw v. U.S. Railroad Retirement Board, 815 F.2d 1066, 1067 (6th Cir.1987) ("The Social Security Act regulations on disability ... are sufficiently analogous to those of the Railroad Retirement Act to be applicable to railroad retirement cases.") Accordingly, in disability cases the Board recognizes and uses SSA disability regulations, found at 20 CFR 404.1501-404.1598.
 
 
 16
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Sec. 223(d)(1)(a). The standard for disability under the Act is "an inability to engage in any substantial, gainful activity." SSA regulations provide a five step process to determine disability. (1) If the claimant is working, benefits are automatically denied. 20 C.F.R. Sec. 404.1520(b). (2) If the claimant is not found to have an impairment that significantly limits the ability to work (a severe impairment), then the claimant is determined "not disabled" based on the medical evidence alone. 20 C.F.R. Sec. 404.1520(c). (3) If a claimant is not working and suffers from a severe impairment, the impairment must meet or equal a "listed" impairment found in Appendix 1, 20 C.F.R. Sec. 404.1520(d), if so, a claimant is disabled based on the medical evidence alone and benefits are owing without further inquiry. (4) Assuming the claimant is not found to be disabled it must be determined whether the claimant can perform past relevant work; if so, a finding of "not disabled" must be made. (5) Where a claimant is incapable of performing past relevant work, the burden shifts to the Secretary to prove there is work in the national economy the claimant is able to perform through a review of claimant's residual functional capacity, that is, the level of work the claimant is able to perform (sedentary, light or medium) and of the claimant's vocational factors (age, education and prior work experience). If an individual meets the criteria for a level of work, the claimant is not disabled. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 527 (6th Cir.1981), cert. denied, 461 U.S. 975 (1983).
 
 
 17
 Neither party disputes steps one and two. Lisee was not working and had not engaged in substantial gainful activity, and he had a severe back impairment which significantly limited his physical ability to do basic work activities.
 
 1.
 
 18
 Lisee first argues the Board erred at step three in determining his impairment did not meet or equal the severity of impairments listed in Appendix 1 of the SSA. Rule 1.05.C. sets out the listed impairment pertinent to Mr. Lisee. Listing 1.05.C. reads:
 
 
 19
 C. Other vertebrogenic disorders (e.g. herniated nucleus pulposus, spinal stenosis) with the following persisting for at least three months despite prescribed therapy and expected to last twelve months. With both one and two:
 
 
 20
 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 21
 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.
 
 
 22
 The hearings officer determined that the Petitioner has "a severe vetebrogenic disorder of the lumbar spine with radioculopathy of the lower left extremity ... associated with pain and signs of sensory loss, reflex loss and weakness of the muscles of the foot." The hearings officer found, however, Lisee did not meet the standard listed for vertobrogenic disorders because an "observation of limited spinal motion was reported only once, in July 1989, [Dr. Hughes]" and there was no objective evidence that it persisted for three months and was expected to last for twelve months. In addition, the hearings officer found no objective evidence of muscle spasms subsequent to November 1985.
 
 
 23
 According to Lisee, prior to the 1987 denial of benefits both Doctor Kreis and Doctor Holen documented range of motion abnormalities and muscle spasms. Lisee argues because limited spinal motion was found by examining physicians prior to 1986 and again by Dr. Hughes in 1989, this symptom meets the duration requirement. Lisee contends that muscle spasms were documented before 1986 and that no post-1989 physician found he did not have muscle spasms.
 
 
 24
 a.
 
 
 25
 The hearings officer declined to consider any medical evidence which related to the first disability application which dated from 1983 to 1986. The hearings officer stated that the denial of his first application for benefits was a final determination of Lisee's medical condition under the Act as of that date. The Board argues that because the 1987 decision was final, all evidence relied upon for such determination is irrelevant to the second application.
 
 
 26
 We agree that the 1987 finding of not disabled is a final decision, not to be re-opened. We disagree, however, with the contention that all medical evidence prior to the 1987 determination was irrelevant to the hearings officer's determination. Of course evidence of Lisee's original accident, and information about his laminectomy and subsequent physical therapy are "relevant" even though such evidence did not establish a disability. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable if less probable than it would be without the evidence." FRE 401.
 
 
 27
 The medical records from 1983-1986 would have been helpful to this panel but because the hearings officer did not consider these records they are not reviewable on appeal. This Court does not consider the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility. Myers v. Secretary of Health and Human Services, 893 F.2d 840, 842 (6th Cir.1990) the Board's decision, therefore, must stand if supported by substantial evidence regardless of whether we would resolve issues of fact differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983).
 
 
 28
 b.
 
 
 29
 This Circuit must affirm a decision of the Board regarding entitlement to benefits if it is supported by "substantial evidence." Coker v. Gielow, 806 F.2d 689, 693 (6th Cir.1986), cert. denied, 482 U.S. 906 rehg. denied, 483 U.S. 906 (1987). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk, 667 F.2d at 535. In determining whether the Board's findings are supported by substantial evidence, this Circuit examines the evidence in the record "taken as a whole," Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir.1978) (citation omitted).
 
 
 30
 Lisee visited three doctors in 1989. Dr. Sadry conducted X-rays, EMG and MRI but he did not measure Lisee's range of back motion nor report the existence or non-existence of back spasms. Dr. Hughes reported range of motion abnormalities. Specifically, Dr. Hughes found Lisee could bend forward 20 degrees (normal range: 45 degrees) and could bend 10 degrees to each side (normal lateral bending: 30 degrees). Dr. Hughes did not discuss muscle spasms except as a symptom described by Lisee. Dr. Krakauer did not measure range of motion, but he noted "lumbar stiffness," and failed to discuss the presence or absence of muscle spasms.
 
 
 31
 After 1985, only Dr. Hughes noted range of motion abnormalities. More importantly, no post-1985 physician reported muscle spasms. No evidence of muscle spasms exists outside Lisee's own representations. Because we find no objective evidence of muscle spasms in the record before us, Lisee does not meet or equal the requirements for the listed impairment for herniated lumbar vertebrae found at Rule 1.05.C. Thus, he is not disabled based upon the medical evidence alone.
 
 
 32
 The fourth step requires the Board consider whether Mr. Lisee can return to his past relevant work. Neither party disputes that Lisee's impairment prevents the performance of his past job as a brakeman/conductor.
 
 2.
 
 33
 Lisee's second dispute concerns the Board's fifth step determination that he could perform a full range of sedentary work. During the fifth and final step the Board must prove whether a claimant is able to perform any substantial gainful activity in the national economy. This determination requires consideration of a claimant's residual functional capacity (the level of work the claimant can perform) and vocational factors (age, education and past work experience). Lisee argues the hearings officer erred in determining his residual functional capacity. First, he argues the determination was not based on substantial evidence because the hearings officer discounted the opinion of his treating physician and his own allegations of pain. He next argues the hearings officer erred in applying the Medical Vocational Guidelines.
 
 
 34
 a.
 
 
 35
 Lisee contends that Dr. Sadry qualified as his "treating physician." He argues that hearings officers must defer to treating physician's findings and hearings officer Streitfeld erred by discounting Dr. Sadry's finding that Lisee could not perform a full range of sedentary work. In addition, Lisee argues Streitfeld ignored the findings of the Board's own consulting physician.
 
 
 36
 In April 1990, Dr. Sadry assessed Lisee's physical abilities and concluded, based on his examination and tests, Lisee was "not able to perform even at a sedentary capacity on the basis of eight hours a day, five days a week." Specifically, Dr. Sadry found Lisee: (1.) could not sit for more than four hours in an eight hour day; (2.) could not sit for more than two hours at a time; (3.) could walk for two hours; (4.) could sit or stand for four hours each (but not sit for more than four); and (5.) could lift up to 25 pounds. Dr. Krakauer, a consulting physician, found Lisee had a "limited" capacity to do sedentary work but did not define "limited." Despite these opinions, the hearings officer determined Lisee retained a residual functional capacity to perform the full range of sedentary work.
 
 
 37
 Social Security regulations define sedentary work as that which requires lifting no more than 10 pounds, and which primarily may be performed sitting with "occasional walking and standing." 20 C.F.R. Sec. 404.1567(a). Social Security Ruling 83-10 defines "occasional walking and standing" as constituting no more than about two hours of an eight hour work day (as the standing and walking to file or fetch items demands.) Dr. Sadry's finding that Lisee could not sit for more than four hours a day is inconsistent with the sedentary work standard of six hours sitting and two hours of walking or standing per eight hour day.
 
 
 38
 The Board argues Dr. Sadry did not act as a "treating physician' and his findings, therefore, were not due great deference. Specifically, the Board contends that Dr. Sadry's two examinations of Mr. Lisee (once in March and once in May of 1989) were insufficient to elevate Dr. Sadry to the status of a treating physician. In addition, the hearings officer stated that he did not rely on Dr. Sadry's or Dr. Krakauer's reports because they were not based on sufficient medical data. The hearings officer noted neither report mentioned range of motion limitations preclusive of Lisee's performance of sedentary work and both conclusions were inconsistent with the "paucity" of objective medical evidence relating to the back.
 
 
 39
 i.
 
 
 40
 Although this Circuit accords substantial deference to the medical opinions and diagnoses of treating physicians we define "treating physicians" as those physicians "who have treated a patient over a period of time or who are consulted for purposes of treatment." Allen, 613 F.2d at 145 (emphasis added); see also, Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985). Dr. Sadry's two examinations, over a period of less than two months, do not appear to elevate him to the status of a treating physician.
 
 
 41
 Although the opinion of the "treating physician should be given greater weight ... [t]his is true, however, only if the treating physician's opinion is based upon sufficient medical data." Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir.1984); see also Bogle v. Sullivan, 1993 U.S.App. LEXIS 16182, at * 12 ("[treating physicians'] opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.")
 
 
 42
 The hearings officer found that Dr. Sadry's and Dr. Krakauer's determinations were not supported by the medical evidence provided in their reports. Specifically, the hearings officer stated that the objective medical evidence instead supported that Lisee was not disabled and could perform a full range of sedentary work. This Circuit has stated "[u]ltimately, of course the determination of disability remains the ultimate prerogative of the Board, not the treating physician." Harris, 756 F.2d at 435. Even if Dr. Sadry qualified as a treating physician, the hearings officer properly discredited his and Dr. Krakauer's findings because the objective evidence did not support their findings that Lisee could not perform a full range of sedentary work.
 
 
 43
 ii.
 
 
 44
 Lisee also argues the Board erred in discrediting his testimony that he suffered disabling pain. In determining that Mr. Lisee could perform sedentary work, the hearings officer considered and rejected Mr. Lisee's testimony that pain triggered by his back impairment rendered him disabled for all work.
 
 
 45
 In this Circuit, the Board must consider "objective evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques in determining whether an individual is under a disability." 42 U.S.C. Sec. 423(D)(5)(a); Blacha v. Secretary of Health and Human Services, 927 F.2d 228, 230 (6th Cir.1990). This Circuit engages in a two pronged analysis:
 
 
 46
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, then we examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 47
 Blacha, 927 F.2d at 230. The hearings officer did not find that Mr. Lisee does not suffer from pain. He instead discredited the extent of the allegedly disabling pain based on the lack of objective evidence and other factors. Specifically, he noted that the "paucity of objective findings relating to the back" as well as Lisee's actions, demeanor and activities undermined his claims of disabling pain. We find although Lisee has a severe back impairment, the objective medical evidence and his activities do not confirm the severity of his alleged pain.
 
 
 48
 Lisee testified that for a period of two and one half years following the denial of his first benefits claim, he sought no medical attention at all. In over four years, Lisee has seen only one doctor, Dr. Sadry, on his own volition. Lisee also testified to using only mild, over-the-counter pain relievers several times a week, explaining that prescription drugs did not help his pain, caused unpleasant side effects and were expensive. He further stated he occasionally performs light housework, drives his wife to work each day, and walks two blocks every other day.
 
 
 49
 This Circuit noted that the use of only mild medications undercuts complaints of disabling pain, Kimbrough v. Secretary of Health and Human Services, 801 F.2d 794, 797 (6th Cir.1986), as does the failure to seek treatment. Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir.1988). The hearings officer/ALJ should also take into account any household or social activities inconsistent with allegations of pain. Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 (6th Cir.1986). Further, any credibility determinations in relation to subjective claims of pain belong to the hearings officer. Duncan v. Secretary of Health and Human Services, 801 F.2d 847 (6th Cir.1986). Although the hearings officer/secretary should not use an arbitrary "sit and squirm" index, he "should not ignore his own observations concerning the demeanor and actions of a disability claimant 'since credibility, especially with alleged pain, is crucial to the resolution of a claim, the ALJ's opportunity to observe the demeanor is invaluable....' " Harris, 756 F.2d at 439 citing Kirk v. Secretary, 667 F.2d 524, 538 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). If the hearings officer's opinion is supported by substantial evidence, the "determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." Kinsella, 708 F.2d at 1059 (6th Cir.1988).
 
 
 50
 The hearings officer properly discredited Lisee's allegations of severe pain because first, no objective medical evidence substantiated Lisee's allegations, and second, Lisee's behavior belied his claims.
 
 
 51
 b.
 
 
 52
 Lastly, Lisee argues the hearings officer incorrectly applied the Medical Vocational Guidelines. After determining Lisee could perform a full range of sedentary work, the hearings officer applied the Medical-Vocational Guidelines and determined that a significant number of jobs existed in the national economy for a person with Lisee's vocational ability. The hearings officer determined that, Table 1 of Appendix 2 notes "[a]pproximately 200 separate unskilled sedentary occupations...."
 
 
 53
 Use of the Medical-Vocational Guidelines, or "grid," is appropriate where the adjudicator discredits subjective allegations of pain for a legally sufficient reason. Wyatt, 974 F.2d at 684. As explained above, the hearings officer properly discounted the physicians' reports and properly discredited Lisee's allegations of pain in finding Lisee could perform a full range of sedentary work. Two hundred jobs exist at Lisee's work level. The Board, therefore, did not err in finding the claimant could perform substantial gainful activity in the national economy.
 
 III.
 
 54
 For the reasons stated above, we AFFIRM the decision of the Railroad Retirement Board.