Cheryle D. ZEIGLER, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. 6:02CV1345–ORL–22KRS.

United States District Court, M.D. Florida, Orlando Division.

Feb. 3, 2004.

Richard Allen Culbertson, Law Office of Richard A. Culbertson, Orlando, Fla., for plaintiff.

Susan R. Waldron, U.S. Atty's Office, Middle District of Florida, Mary Ann Sloan, Dennis R. Williams, General Counsel's Office, Social Security Administration, for defendant.

## ORDER

CONWAY, District Judge.

This cause came on for consideration upon the filing of a Complaint seeking review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability and supplemental security income benefits. (Doc. No. 1).

The United States Magistrate Judge has submitted a report recommending that the

decision of the Commissioner be reversed and that the case be remanded for further proceedings.

After an independent *de novo* review of the record in this matter, and noting that no objections were timely filed, the Court agrees entirely with the findings of fact and conclusions of law in the Report and Recommendations.

Therefore, it is **ORDERED** as follows:

1. The Report and Recommendation filed January 14, 2004 (Doc. No. 29), is **ADOPTED** and **CONFIRMED** and made a part of this Order.

2. The decision of the Commissioner is hereby **REVERSED,** and this case is **RE-MANDED** for further proceedings consistent with the Report and Recommendation.

3. The Clerk is directed to enter judgment accordingly, and **CLOSE** the file.

## REPORT AND RECOMMENDATION

SPAULDING, United States Magistrate Judge.

### Summary of the Record.

Cheryle Zeigler appeals from the denial by the Social Security Administration ("SSA") of her applications for disability and supplemental security income benefits. Zeigler's primary complaints before the SSA were that heart problems made her unable to work due to fatigue, chest pain, and swelling in her legs and feet. She alleges that she became disabled on Feb-ruary 1, 2000.[1] The SSA denied her applications initially, on reconsideration, after a hearing before an Administrative Law Judge ("ALJ"), and at the Appeals Council.[2]

The medical records of Vajihuddin Khan, M.D., a treating physician, reflect that Zeigler had a history of congestive heart failure and atrial fibrillation, but the records supporting the initial diagnosis of congestive heart failure are not before the Court.[3] In April 2000, Zeigler had open heart surgery for repair of her heart's mitral valve.[4] Although initial reports note that the surgery was successful[5], the medical records reflect that Zeigler's heart had already been damaged. A heart catheterization done before the surgery and a subsequent echocardiogram taken in September 2000 revealed that Zeigler had mildly decreased left ventricular function, with an ejection fracture of 50%.[6] Echocardiograms showed an enlargement of the left ventricle and right atrium of Zeigler's heart.[7] By June 2000, treating physician H.B. Karunaratne, M.D., noted that Zeigler was again suffering from mitral regurgitation.[8] He adjusted Zeigler's medication in an attempt to deal with her complaints of fatigue, weight gain and depression.[9] An EKG taken in April 2001 detected tachycardia.[10] In October 2000, Dr. Kahn determined that Zeigler had high cholesterol and hypertension.[11]

Before the alleged onset date of her disability, Zeigler had worked as the own-

1. TR. 85–87, 290–92.

2. TR. 8, 19, 64–72, 294–301.

3. TR. 150.

4. TR. 151–53.

5. TR. 154.

6. TR. 171, 184, 223.

7. TR. 158, 160.

8. TR. 271–75.

9. TR. 271.

10. TR. 254.

11. TR. 144.

er/manager of an escort business, a time share salesperson and a restaurant manager.[12] She testified that she could no longer work because chest pain and swelling of her legs and feet made it difficult for her to exert herself, and required her to lie down frequently during the day.[13] She reported that a typical day required her to rest frequently between activities.[14]

Dr. Khan's assessment of Zeigler's functional limitations in light of her heart problems was that Zeigler could sit, stand or walk less than one hour a day. She must alternate positions frequently and elevate her feet to alleviate swelling. She could never bend or use her feet for pushing or pulling. She could never lift as much as five pounds. She must have the ability to rest frequently throughout the day.[15]

The ALJ rejected both Zeigler's testimony and Dr. Khan's functional capacity assessment because he found them to be unsupported by the record.[16] He concluded, apparently in reliance on the opinions of SSA reviewing physicians, that Zeigler had the capacity to perform light work, with no nonexertional limitations.[17] A vocational expert determined that Zeigler's past work did not require more than a medium to light level of exertion.[18] Therefore, the ALJ found that Zeigler was not disabled because she could perform her previous work.[19]

Zeigler challenges this finding, arguing, among other things, that the ALJ failed to give adequate weight to the opinion of Dr. Khan, a treating physician, and to her own testimony. She submitted additional evidence with her legal memorandum that she contends shows that she has additional impairments that prevent her from working.

### Analysis.

On review of a denial of benefits by the SSA, the Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1081 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The SSA is required to give great weight to the opinions of treating physicians, unless the opinions are not supported by objective evidence or are wholly conclusory. *See Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991). The SSA also must credit a claimant's complaints of pain and other subjective symptoms that are supported by evidence of an underlying medical condition of sufficient severity that it could be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991).

In this case, the ALJ failed to follow these legal principles. It is undisputed that Zeigler suffers from heart disease, described by the ALJ as mitral insufficiency. Available literature describes chronic mitral insufficiency, often referred to as mitral regurgitation ("MR"), as "a long-term condition that generally worsens over time...." WebMDHealth, *Mitral Valve Regurgitation*, found online at http://my.webmd.com/content/healthwise/ 175/55362 (last visited January 14, 2004).

12. TR. 30–32.

13. TR. 35–36, 39–43.

14. TR. 52–55.

15. TR. 209–11.

16. TR. 17–18.

17. *Id.*

18. TR. 60, 220.

19. TR. 18.

It is caused by the mitral valve of the heart leaking blood that accumulates in the left ventricle. When the heart contracts, it must pump harder to push this extra blood out of that chamber of the heart. This results in too little blood circulating through the body. Over time, it may result in enlargement of the left ventricle, which can cause it to weaken. This may eventually lead to heart failure. WebMD-Health,*Mitral Valve Regurgitation*, found online at http:// my.webmd.com/content/healthwise/162/51413 (last visited January 14, 2004).

Indications of mitral insufficiency include a rapid heartbeat (tachycardia), irregular heartbeat (arrhythmias), and fluid build up in the lungs (pulmonary edema). *Id.* Laboratory findings of mitral insufficiency include a reduced ejection fracture, which measures the efficiency of the ventricles, *see Pouska v. Apfel,* No. 99 C 805, 2000 WL 1347891, at *5 n. 16 (N.D.Ill. Sept. 19, 2000), and enlargement of the heart or thickening of the walls of the atrium or ventricle (hypertrophy), *see In re Diet Drugs,* Nos. 1203, 99–20593, 2000 WL 1222042, at *11 (E.D.Pa. Aug.28, 2000). Mitral insufficiency can result in chest pain, fatigue, shortness of breath, fluid buildup in the legs and feet, lightheadedness and irregular heart rhythms, among other things. WebMDHealth,*Mitral Valve Regurgitation,* found online at http:// my.webmd.com/content/healthwise/175/55362 (last visited January 14, ·2004).

 While accepting the objective evidence supporting the diagnosis of mitral insufficiency, the ALJ apparently was unaware of the symptoms of the progression of the disease. In this case, Zeigler's complaints of chest pain, fatigue, shortness of breath, lightheadedness and fluid buildup in her legs and feet are all symptoms associated with mitral insufficiency. Thus, the ALJ's statement that "the medical records did not provide support of any illness" that would account for Zeigler's complaints of pain and swelling in her legs and feet [20] is simply not consistent with the record.

 The SSA has the discretion to determine the functional limitations arising from impairments. In doing so, however, it must give deference to the opinion of the claimant's treating physician. Dr. Khan, who had treated Zeigler throughout the time reflected in the record, was in a good position to evaluate the functional limitations from her heart disease. Dr. Khan opined that heart disease prevented Zeigler from performing even the full range of sedentary work. His opinion that she had limits on her exertional capacity and needed to rest frequently and elevate her feet is consistent with Zeigler's complaints of fatigue and edema, both of which are symptoms of mitral insufficiency. There is, therefore, no substantial evidence in the record to support the ALJ's conclusion that Dr. Khan's functional capacity assessment was not supported by the record. (TR. 18).

 Moreover, it was error for the ALJ to rely substantially on the opinions of reviewing physicians, even if there was a basis for questioning Dr. Khan's assessment. *Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir.1988)("The reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision."). Instead, the ALJ should have sought clarification from Dr. Khan or a consultative examination by a cardiologist.

 Finally, the ALJ's conclusion that Zeigler's complaints were not totally credible because she was noncompliant with

**20.** TR. 17.

·

medication and treatment are on equally shaky ground. Dr. Karunaratne, one of her treating physicians, agreed with discontinuation and changes in her medication.[21] Further, Zeigler testified that she was at times not financially able to pay for medication and treatment.[22] Poverty excuses noncompliance with treatment. *See Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir.1988).

The record is not sufficiently developed to support a finding than an award of benefits is required. For all of the reasons discussed above, remand for further proceedings is required. On remand, Zeigler may present evidence of additional impairments. The SSA shall assess all of Zeigler's exertional and nonexertional impairments. If the SSA determines that Zeigler cannot return to her past relevant work in light of her impairments, the better practice is to call upon a vocational expert to assist in determining whether there is work available that Zeigler can perform.

### Recommendation.

Accordingly, I recommend that the decision of the Commissioner be REVERSED and that the case be REMANDED for further proceedings. I further recommend that, after the Court issues an order on this Report and Recommendation, it direct the Clerk of Court to close the file.

*Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.*

Jan. 14, 2004.