**Donald E. LOVELESS, Plaintiff,**

v.

**Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant.**

CIV. A. No. 00–M–798–N.

United States District Court, M.D. Alabama, Northern Division.

April 11, 2001.

John F. Cameron, Montgomery, AL, for plaintiff.

R. Randolph Neeley, U.S. Attorney's Office, Montgomery, AL, for defendant.

## ORDER

McPHERSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), the claimant, Donald E. Loveless, brings this action to review a final decision by the Commissioner (Doc. # 1, ¶ 1, ¶ 2). The Commissioner denied the claimant's claims for Disability Insurance benefits and Supplemental Security Income ["SSI"] (Doc. # 1). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be AFFIRMED.

## I. PROCEDURAL BACKGROUND AND FACTS

The claimant, who has a high school education, was 40 years old at the time of the administrative hearing (R. 31, 100). The claimant's past relevant work experience includes cook, restaurant worker, service station attendant, and laborer (R. 11). He alleges a disability onset date of 18 June 1995 due to a broken heel (R. 10, 100, 122). He testified that he can not stand on his left leg for long periods of time; suffers from moderately severe pain in his left ankle, heel, and wrist; and that his pain is alleviated with medication (R. 35–37).

On 25 July 1995, the claimant filed two applications under the Social Security Act: (1) an application for Disability Benefits under Title II of the Act, 42 U.S.C. §§ 401 et seq. (R. 71–74); and (2) an application for Supplemental Security income benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. (R. 100–102). These applications were denied initially and upon reconsideration (R. 90–93, 97–99, 104–107, 117–119). Following an administrative hearing, the Administrative Law Judge ["ALJ"] denied the claimant's

requests for benefits in a decision dated 13 August 1998 (R. 10–19). On 14 April 2000, the Appeals Council denied the claimant's request for review (R. 3–4). Therefore, the hearing decision became the final decision of the Commissioner of Social Security. On 19 June 2000, the claimant filed the instant action which alleges that the Commissioner's decision is "not supported by substantial evidence and is contrary to law" (Doc. # 1, ¶ 6).

## II. STANDARD OF REVIEW

 In reviewing claims brought under the Act, this court's role is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983)). This court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir.1997).[1] "In determining whether substantial evidence exists, [this court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir.1991).

## III. DISCUSSION

### A. Standard for Determining Disability

An individual who files an application for Social Security disability benefits must prove that he is disabled. *See* 20 C.F.R. § 416.912 (1999). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

 The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that he is disabled. *See* 20 C.F.R. § 416.920 (1999). The ALJ must also evaluate the claimant's case using this sequential evaluation process. *Ambers v. Heckler,* 736 F.2d 1467, 1469 (11th Cir.1984).

First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant's condition or impairment must be deemed "severe."[2] Third, it must be determined whether the claimant's severe impairment meets or equals the severity of a listed impairment. If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant is conclusively presumed to be disabled based on his or her medical condition. If the severe impairment does not equal or meet the severity of a listed impairment, the examiner proceeds to the fourth step.

Fourth, the claimant's residual functional capacity ["RFC"] is assessed, which measures whether a claimant can perform past relevant work despite his or her im-

---

**1.** In *Graham.* the Court of Appeals stated that "substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 129 F.3d at 1422. *See also Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

**2.** The condition is severe if it significantly limits claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c)(1), 416.920(c).

pairment. If the claimant is unable to do past relevant work, the examiner proceeds to the fifth and final step of the evaluation process to determine whether in light of RFC, age, education and work experience the claimant can perform other work. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).

## B. The ALJ's Findings

Within the structure of the sequential evaluation process, the ALJ found that the claimant met the disability insured status requirements of the Act on 18 June 1995, the date the claimant stated he became unable to work, and that he has not engaged in substantial gainful activity ["SGA"][3] since that date (R. 17).[4] The ALJ also found that the claimant has acquired sufficient quarters of coverage to remain insured through at least 30 September 2000 (R. 17).

The ALJ found that the medical evidence establishes that the claimant has the "severe" impairments of blindness in the right eye, a history of orthopedic impairments, and probable borderline intellectual functioning (R. 17). However, the ALJ also found that the claimant does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4 (R. 17).

The ALJ found that the claimant's statements concerning his impairments and their impact on his ability to work were "not entirely credible in light of the claimant's assertions concerning his ability to work" (R. 18). The ALJ also found that the claimant's impairments prevent him from performing his past relevant work as a cook, but that the claimant has the RFC to perform a restricted range of light or sedentary work[5] (R. 18). In turn, the ALJ concluded that the claimant has not been under a "disability," as defined in the Act, at any time through the date of the decision and was thereby ineligible for any benefits (R. 18).

## C. Subjective Allegations of Pain

■ The claimant contends that the ALJ "improperly failed to give credibility to his testimony of severe, disabling pain and other subjective symptoms, and improperly failed to articulate explicit and adequate reasons for doing so" (Doc. # 13, p. 4). The Court of Appeals has stated that in examining a claimant's complaints of pain and other objective medical symptoms, "[t]he Secretary must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged

---

3. Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.

4. The claimant reports that after the date of alleged onset of disability he worked for a time as a cook, and has now continued to work as a cook (R. 11). The ALJ notes that the amount which the claimant has been earning does not rise to an amount which is considered to be SGA (R.11). The ALJ, therefore, found that the claimant has not engaged in SGA within the meaning of the regulations since 18 June 1995, his alleged onset date (R. 11).

5. Specifically, the ALJ found that the claimant "has the RFC to lift 25 pounds occasionally and 10 pounds frequently, stand/walk up to two hours out of an eight hour work day and for no more than one hour at a time and sit up to six hours out of an eight hour work day and for no more than four hours at a time, limited by occasional crawling, climbing and reaching, no squatting and no work involving unprotected heights, moving machinery, marked changes in temperatures or humidity, driving automotive equipment and exposure to dust, fumes and gas" (R. 18).

pain." *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir.1995) (citations omitted). The Court of Appeals has provided further guidance on the matter:

> After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence. *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir.1984). If the ALJ refused to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility. *Walker v. Bowen,* 826 F.2d 996, 1004 (11th Cir. 1987).

*Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir.1992) (citations omitted).

To be sure, there exists an underlying medical condition[6] that would reasonably support the existence of the pain about which the claimant complains. The claimant's subjective allegations of pain include: moderately severe pain in his left knee, ankle, heel and wrist (R. 37). The claimant also testified that this pain increases with standing or walking, and that prolonged standing causes his left leg to swell (R. 36–37).

In discrediting the claimant's allegations of pain, the ALJ found that the claimant's statements concerning his impairment and its impact on his ability to work are not entirely credible in light of his assertions concerning his ability to work (R. 28). Specifically, the ALJ stated:

> [t]here is no clinical proof that the claimant is experiencing any significant difficulty with his ankle, knee, right arm, left arm, left wrist or right eye to prevent work activity. While the undersigned acknowledges the claimant may have periodic discomfort, there is no objective evidence to support a conclusion that all work activity is precluded

(R. 14). The medical record indicates that on 18 June 1995, the claimant was treated for a fractured calcaneus[7] in his left foot suffered from a fall (R. 149–64). The claimant refused surgery and elected to receive conservative treatment, which consisted of Tylenol # 3, crutches and instructions to stay off and keep foot elevated (R. 161). In December 1995, it was shown that the claimant was ambulatory without assistive devices and x-rays show that the patient was healing well (R. 184, 236).

The ALJ specifically noted that "the medical record shows that the claimant has been in numerous altercations resulting in injuries to his knee, right arm, left arm, left wrist, and right eye, resulting from over indulgence in alcohol and/or drugs" (R. 13). The medical record indicates that on 13 March 1996, the claimant was treated for left knee pain after another fall (R. 179–182). Although slight swelling was noted, the knee was stable and x-rays of the knee in March and April 1996 showed no evidence of fractures, subluxation[8], or dislocations (R. 179–182, 191). On 18 June 1996, Dr. Glenn Johnson ["Dr. Johnson"] examined the claimant and noted that the claimant "has occasional pain of his left knee and he still has some pain along the dorsum of his mid foot" (R. 231). Dr. Johnson further noted that "[o]ther than this [the claimant] has no complaints" (R. 231).

---

**6.** These underlying medical conditions are: fracture of the left calcaneus, a history of orthopedic impairments, cephalgia, blindness in the right eye and probably borderline intellectual functioning (R. 11,17). Cephalgia is defined as "headache." Webster's Medical Desk Dictionary 108 (1986).

**7.** Calcaneus is defined as "a tarsal bone that in man is the large bone of the heel." Webster's Medical Desk Dictionary 93 (1986).

**8.** Subluxation is defined as "partial dislocation (as of one of the bones in a joint)." Webster's Medical Desk Dictionary 685 (1986).

On 30 May 1997, Dr. James Parks ["Dr. Parks"] examined the claimant and observed that the claimant had good spinal alignment, and a normal range of motion of the upper and lower extremities, with the exception of the left leg, where the range of motion was only slightly reduced (R. 248). Dr. Parks noted that there was tenderness of the left ankle with plantar flexion of fifteen degrees and dorsi flexion of fifteen degrees, although the claimant walked with only a slight limp to the left leg, and did not require an assistive device (R. 248). Dr. Parks opined that the claimant "has residual pain and stiffness in the areas of separate fractures" and noted that "there is some indication of diminished strength as well as muscle loss" (R. 248).

Further, the medical record indicates that in a consultative examination on 24 September 1997, the claimant was observed as having "traumatic arthritis and swelling from old fracture site of the left ankle" (R. 258). The examiner specifically noted that "this swelling always goes down the next morning when he goes to bed" and opined that "there may be some old venous injury in there as well, but certainly I don't see any evidence of varicosities or any problems in the lower leg and there is no abnormality of the pulses distally" (R. 258).

The ALJ also articulated specific reasons for questioning the claimant's credibility. For example, he specifically noted that claimant's daily activities indicate a capacity to perform sedentary work (R. 14). The ALJ stated:

> [t]he claimant testified that he watches television, visits his grandmother, play[s] cards with friends, and these games usually last approximately one or two hours(s), sometimes twice weekly. He does these from a seated position which indicates a capacity to perform sedentary work

(R. 14). In addition, the ALJ noted that the claimant did not demonstrate any apparent visual difficulties, as the claimant "walked in and sat down fine at the hearing and got up and walked out well as well" (R.14). The ALJ further noted that no assistive device was used and none appeared to be needed (R. 14).

Upon reviewing the objective medical evidence in the record, the court concludes that substantial evidence exists to support the ALJ's conclusion that the claimant's allegations are not credible to the extent alleged. Consequently, objective medical evidence supporting the extent of the claimant's complaints of pain has not been established. Because the claimant failed to establish that the objective medical evidence confirms the severity of the pain alleged or that the objectively determined condition is of a severity that can reasonably be expected to give rise to the alleged pain, the court finds that the ALJ properly considered and analyzed the claimant's subjective testimony of pain.

### D. Hypothetical Questions Posed to Vocational Expert

 In the fourth step of the test, the ALJ sought to determine the claimant's residual functional capacity by propounding questions, some of which were hypothetical, to the VE. The ALJ is required to pose a hypothetical question to the VE which comprehensively describes the claimant's impairments. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir.1985). If the hypothetical question upon which the vocational expert bases his evaluation does not assume all of a claimant's impairments, the decision of the ALJ denying a claimant's applications for disability insurance benefits, which is based significantly on the expert testimony, is not supported by substantial evidence. *Id.* Notwithstanding the foregoing general standard, the hypothetical question posed by the ALJ may

omit non-severe impairments. *See Pendley v. Heckler*, 767 F.2d at 1563.

█ In this case, the claimant contends that the ALJ submitted an improper hypothetical question to the VE because he was not asked to consider several of the claimant's limitations or impairments (Doc. # 13, p. 8). Specifically, the claimant contends that the ALJ failed to include in the hypothetical questions the claimant's subjective allegations of pain including: (1) his "periodic discomfort"; (2) impaired concentration; (3) residual pain; (4) stiffness; and (5) the limited range of motion of his ankle (Doc. # 13, p. 8).

The court has already concluded that the ALJ properly considered the claimant's subjective allegations in finding that his allegations of pain, to an extent that would preclude work activity, are not credible (R. 14). *Supra.* Having reviewed the record, the court finds that the ALJ's hypothetical questions posed to the VE were proper because they included only the impairments that the ALJ found to have been severe. Because the court finds that the ALJ's determination of non-severity was supported by substantial evidence, the court concludes that the ALJ's hypothetical questions to the VE were sufficiently comprehensive.

For all of these reasons, the court finds no error in the ALJ's decision and finds as well that the ALJ's decision is supported by substantial evidence and is the result of the application of appropriate legal standards. The claimant's contentions are without merit.

## IV. CONCLUSION

For the foregoing reasons, it is the Order of this court that the decision of the Commissioner be AFFIRMED.