**Christopher Eric OLSEN, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**Case No. 3:11–cv–32–J–37TEM.**

United States District Court, M.D. Florida, Jacksonville Division.

March 7, 2012.

Plaintiff's Petition, $3,220.68 to Ms. Harrington and $179.41 to Ms. Bohr.

Richard A. Culbertson, Law Office of Richard A. Culbertson, Orlando, FL, for Plaintiff.

John F. Rudy, III, U.S. Attorney's Office, Tampa, FL, for Defendant.

## ORDER

ROY B. DALTON JR., District Judge.

This cause is before the Court for consideration of U.S. Magistrate Judge Thomas E. Morris's Report and Recommendation (Doc. No. 22), filed on February 17, 2012; Defendant Commissioner of Social Security's Objections to the Report and Recommendation (Doc. No. 23), filed on February 21, 2012; and, Plaintiff Christopher Eric Olsen's Response (Doc. No. 24), filed on March 6, 2012.

## STANDARD OF REVIEW

■ When a party objects to the magistrate's findings, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Veteto,* 701 F.2d 136, 140 (11th Cir.1983) (indicating that although the court must make a de novo determination, a de novo hearing is not required). A *de novo* determination requires the district judge to consider factual issues on the record independent of the magistrate judge's Report and Recommendation. *Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.,* 896 F.2d 507, 513 (11th Cir.1990). The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1).

## ANALYSIS

In his Report and Recommendation, Judge Morris recommended that the decision of the Commissioner be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be REMANDED for additional proceedings consistent with his report. (Doc. No. 22, p. 21.) Specifically, Judge Morris found that Administrative Law Judge ("ALJ") Gerald F. Murray "failed to make findings sufficient for the Court to ascertain whether the restriction to unskilled work limited by occasional contact with the public, as stated in the [residual functional capacity ("RFC") determination] and the hypothetical question, adequately encompassed Plaintiff's severe mental impairment." (*Id.* at 20.)

Defendant objects to the Report and Recommendation, urges the Court to not adopt the recommendation of remand, and seeks affirmance of the Commissioner's decision. (Doc. No. 23, p. 1.) In particular, Defendant asserts that ALJ "explicitly and implic[itly] accounted for Plaintiff's concentration limitations when he relied on the state agency psychological experts opinion that despite Plaintiff's moderate difficulties in maintaining concentration, persistence or pace he could complete a regular workday with limited interaction with the public and co-workers (Tr. 17, 331, 343)." (*Id.* at 1–2.)

After an independent *de novo* review of the record in this matter, including the objection filed by Defendant, and Plaintiff's response to said objection, the Court agrees entirely with the findings of fact and conclusions of law in Judge Morris's Report and Recommendation. The Court finds that Defendant's further arguments as to this objection do not warrant additional discussion, as the Report and Recommendation addresses those arguments in a well-reasoned and a thorough manner. The Court overrules Defendant's objection and adopts Judge Morris's analysis and conclusions.

## CONCLUSION

Based on the foregoing, it is **ORDERED** as follows:

1. The Report and Recommendation filed on February 17, 2012, (Doc. No. 22), is **ADOPTED** and made a part of this Order.

2. Defendant's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g).

3. The case is **REMANDED** to Defendant to: (1) reconsider the record as a whole; (2) reassess Plaintiff's residual functional capacity in light of this opinion and the record evidence; (3) pose a hypothetical question to the vocational expert that specifically accounts for Plaintiff's mental limitations; and (4) conduct any other proceedings deemed appropriate.

6. The Clerk is hereby directed to enter judgment in accordance with this Order and close this case.

## REPORT AND RECOMMENDATION [1]

THOMAS E. MORRIS, United States Magistrate Judge.

This case is before the Court on Plaintiff's complaint (Doc. # 1). Plaintiff seeks review of the final decision of the Commissioner of Social Security that denied Plaintiff's claim for supplemental security income (SSI) disability payments. *Id.* This Court has authority to conduct the requested review. 42 U.S.C. § 405(g).

Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. # 15). Defendant filed his brief in support of the decision to deny disability benefits (Doc. # 18). The Commissioner has filed the transcript of the underlying administrative record and evidence (hereinafter referred to as "Tr." followed by the appropriate page number). The parties did not consent to the exercise of jurisdiction by a magistrate judge and the case has been referred to the undersigned for a report and recommendation.

The Court has reviewed the record and has given it due consideration in its entirety, including the arguments presented by the parties in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the undersigned **recommends the Commissioner's decision be reversed and the case remanded for additional proceedings.**

## PROCEDURAL HISTORY

Plaintiff filed his application for SSI on March 27, 2008 (Tr. 121–24). Plaintiff asserts an onset of disability beginning October 31, 1998.[2] *Id.* After being denied initially and upon reconsideration, Plaintiff requested a hearing, which was held on May 26, 2010 in Daytona Beach, Florida, before Administrative Law Judge (ALJ) Gerald F. Murray (Tr. 24–43). During the hearing, Plaintiff appeared and testified in person, as did Plaintiff's mother, Donna Olsen, and vocational expert (VE) Donna Mancini. Plaintiff was represented during the underlying administrative phase of the case by attorney Richard A. Schwartz (Tr. 24, 74–77).

On July 21, 2010, ALJ Murray issued a hearing decision denying Plaintiff's claim (Tr. 8–23). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (*see* Tr. 1–5). This action was timely filed in federal court on January 10, 2011 by Plaintiff's current counsel of record, Richard A. Culbertson, Esq. (*see* Doc. # 1, Complaint).

---

1. Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(2); and, Local Rule 6.02(a), United States District Court for the Middle District of Florida.

2. Although the timing is not entirely clear in the record, Plaintiff received child disability payments from either the late 1990's or early 2000's through October 2003 (Tr. 125–128, 131, 146, 155; *also see* Tr. 26–27 for testimony of Plaintiff's mother and Tr. 324 for notes of Dr. Verones stating Plaintiff received disability benefits from 2000 to 2003). Plaintiff's disability benefits ceased in October 2003 when Plaintiff was incarcerated in Flagler County Jail prior to conviction on a felony offense. *Id.*

## SOCIAL SECURITY ACT ELIGIBIL-ITY, THE ALJ DECISION AND THE STANDARD OF REVIEW

A plaintiff is entitled to disability benefits only if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months. 20 C.F.R. § 416.905.[3] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen,* 799 F.2d 1455, 1456, n. 1 (11th Cir.1986). The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920; *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir.1997). Plaintiff bears the burden of persuasion through step four while at step five, the burden shifts temporarily to the Commissioner. *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

The ALJ's decision dated July 21, 2010, denied Plaintiff's claim (Tr. 8–22). ALJ Murray made the preliminary finding that Plaintiff had not attained the age of twen-ty-two before the disability alleged onset date of October 31, 1998 (Tr. 13).[4] At step one of the sequential evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since Plaintiff's alleged onset date (Tr. 13). At step two, the ALJ found Plaintiff's only severe impairment was his bipolar disorder (Tr. 13). At step three, the ALJ found this impairment did not meet or equal any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4 (Tr. 13).

The ALJ assessed Plaintiff retained the residual functional capacity (RFC) to perform unskilled work at any exertional level, with the restriction that Plaintiff have only occasional contact with the public (Tr. 15). At step four, the ALJ determined that Plaintiff could not perform past relevant work as a nursery laborer because that position is considered semiskilled work (Tr. 18, 34). At step five, based in part on the VE's testimony, the ALJ determined that, "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform" (Tr. 18).

Thus, the ALJ found Plaintiff was not under a disability within the meaning of the Social Security Act at any time from Plaintiff's alleged onset date through the date of the decision (Tr. 19).[5]

---

3. Unless otherwise specified, all references to 20 C.F.R. will be to the 2011 edition.

4. There is contradictory information in the record as to whether Plaintiff previously qualified for child disability insurance benefits under the wage earnings of a parent, or received child disability payments under SSI (*see* Tr. 145, noting DIB as the type of prior claim in 2001; *but see* Tr. 27, Plaintiff's mother testified he had been "put on SSI" sometime between age sixteen to eighteen). *See also* 20 C.F.R. § 404.350 (entitlement to child's benefits under DIB). Presumably, however, because Plaintiff had attained the age of twenty-seven (27) at the time he filed

the current application for SSI disability payments, the ALJ considered Plaintiff's application under the five step sequential evaluation established for adults, rather than the three step evaluation under which children are considered for SSI. *Compare* 20 C.F.R. § 416.924 (determining disability for children) *with* 20 C.F.R. § 416.920 (evaluating disability in adults).

5. This ultimate finding is called into question because it appears from the record that Plaintiff was found to be disabled under the Social Security Act and did receive child disability payments prior to his incarceration in October 2003. *See supra* n. 2, at 2. The Court

██ The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.1995); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir.2005). Substantial evidence is comprised of relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Foote*, 67 F.3d at 1560; *Moore*, 405 F.3d at 1211.

██ When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n. 3 (11th Cir.1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

██ The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir.1994). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court does not re-weigh the evidence, but determines whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that Plaintiff is not disabled under the Social Security Act. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir.1983).

██ In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen v. Yuckert*, 482 U.S. at 146 n. 5, 107 S.Ct. 2287; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## BACKGROUND AND ANALYSIS

Plaintiff was born on November 24, 1980 (Tr. 121). Thus, he was twenty-nine years old at the time of the administrative hearing. Plaintiff received child disability benefits from sometime in the late 1990's or early 2000's until October 2003, when his benefits ceased pursuant to Social Security Regulations that preclude disability payments to an incarcerated individual. *See* 20 C.F.R. § 416.1325. On October 30, 2003, Plaintiff was incarcerated at the Flagler County Jail, where he remained until he was sentenced after he was found guilty of a felony offense (Tr. 27, 158). In May

---

need not reach a determination on this issue, however, as another ground exists to remand this case to the Commissioner.

2005, Plaintiff was sentenced to a five year term in prison for a felony conviction (*see* Tr. 155, 158). While in prison, Plaintiff did not take prescription medication for his mental health issues, but he was incarcerated on a level three psych ward and received ongoing psychological treatment and evaluation during his imprisonment (Tr. 35, 158, 304–22). On February 23, 2008, Plaintiff was released early from prison (Tr. 122, 158).

On March 27, 2008, Plaintiff applied for SSI benefits (Tr. 121). On his Disability Report–Adult, Plaintiff alleged he is unable to work due to ADHD, emotional problems and a learning disability (Tr. 149). Plaintiff testified that he completed the eleventh grade, but could not obtain a GED because his math skills are at sixth grade level and he could not recollect what he was told if instructed to write it down (Tr. 35). Plaintiff reported that he was "unable to ever maintain a job" (Tr. 149). At the hearing, Plaintiff testified that he has trouble focusing and is easily angered (Tr. 37). Plaintiff also testified that he tried to work as a landscaper, but walked off the job after a confrontation with his boss (Tr. 37). Plaintiff told ALJ Murray that he has looked for a job as a dishwasher, but no one will hire him due to his status as a felon (Tr. 38).

Plaintiff raises the following issues on appeal (Doc. # 15 at 2). Plaintiff first challenges whether the ALJ applied the correct legal standards in consideration of Plaintiff's concentration, persistence or pace. *Id.* at 10–11. Plaintiff questions whether the ALJ applied the correct legal standards in consideration of Plaintiff's "disabling" Global Assessment of Functioning (GAF) scores and the opinion evidence of record. *Id.* at 11–13, 16–21. Plaintiff also asserts the ALJ did not apply the correct legal standards in evaluation of Plaintiff's credibility or the overall finding of "non-disability." *Id.* at 13–16, 21–23.

Although couched in terms of an issue, Plaintiff asserts the appropriate remedy is to remand this case for an award of benefits. *Id.* at 23–24.

In general, Defendant argues the Commissioner's decision that Plaintiff Olsen is not disabled under the Social Security Act is supported by substantial evidence (Doc. # 18). Defendant restates Plaintiff's first issue as a challenge to whether the ALJ properly incorporated Plaintiff's moderate limitations in concentration, persistence or pace in the hypothetical question posed to the VE. *Id.* at 1, 4–7. Relying largely on the case of *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176 (11th Cir.2011), Defendant asserts the medical evidence in Plaintiff's record supports the ALJ's determination that limiting Plaintiff to unskilled work with only occasional contact with the public adequately accounted for Plaintiff's moderate limitations in the domain of concentration, persistence or pace. *Id.* With regard to the remainder of Plaintiff's stated issues, Defendant summarizes them as whether the ALJ fully evaluated the medical evidence and properly ascertained Plaintiff's residual functional capacity. *Id.* at 1, 7–21. In this regard, Defendant argues the ALJ correctly evaluated the evidence and substantial evidence supports the ALJ's findings. *See, e.g., id.* at 18–19 (noting the issue is not whether evidence supports the medical opinion of an examining source, but whether substantial evidence supports the ALJ's findings). Defendant goes on to assert that because Plaintiff's claim is for SSI only, evidence from eight years prior to Plaintiff's application does not tend to show he was disabled during the relevant period. *Id.* at 19.

Upon review of the ALJ's decision and the record evidence, the Court finds reversible error. More specifically, it is unclear whether the ALJ adequately ac-

counted for Olsen's severe mental impairment in the assessed RFC and in the hypothetical question posed to the vocational expert. Therefore, the Court will limit its findings and analysis to this dispositive issue.

### Plaintiff's Residual Functional Capacity and the ALJ's Hypothetical Question

As noted earlier, the ALJ in this case found Plaintiff's bipolar disorder was a severe impairment (Tr. 13).[6] By definition, a severe impairment is one that significantly limits an individual's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). Thus, clearly the ALJ found Plaintiff had a severe mental impairment that affected his ability to work.

To evaluate a claim of disability based on a mental impairment, the ALJ must follow a special procedure, often referred to as the Psychiatric Review Technique, that is set out at 20 C.F.R. § 416.920a. Section 416.920a(b)(2) provides the ALJ must rate the degree of functional limitation resulting from the impairments in accordance with paragraph (c) of that section and must record the findings as set out in paragraph (e) of that section. Subparagraph (c)(4) requires the degree of limitation in the functional areas of daily living; social functioning; and concentration, persistence or pace be rated using a five point scale of: "None, mild, moderate, marked, and extreme," and the degree of limitation in the fourth functional area (episodes of decompensation), be rated using the four-point scale of: "None, one or two, three, four or more." Section 416.920a(e)(4) provides in pertinent part that "[a]t the administrative law judge hearing [level] ... the decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The effects of an impairment are measured by the limitations on the ability to work. The ALJ must consider a claimant's limitations on the ability to work when assessing the severity of an impairment. *See* 20 C.F.R. §§ 416.920(c), 416.921 (limitations from an impairment determine whether it is severe). In accordance with the requirements of 20 C.F.R. § 416.920a(c)(4), the ALJ found Plaintiff Olsen's bipolar disorder caused mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation that had been of extended duration (Tr. 14). Thus, Olsen's mental impairment was determined to cause moderate difficulties in two of the four broad areas of functioning.

If the ALJ finds a claimant's impairment or combination of impairments to be severe, then the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). In this case, the ALJ found Olsen's bipolar disorder did not satisfy "paragraph B" criteria or "paragraph C criteria of the applicable mental disorder listing(s)" (Tr. 14). In fact, the ALJ specifically refers to paragraph C of Listing 12.04 and found Olsen did not have a bipolar disorder with the required level of functional limitation. *Id.*

The four functional areas summarized by application of the Psychiatric Review Technique are broad categories to assist

---

**6.** A bipolar disorder is a "major affective disorder marked by severe mood swings (manic or major depressive episodes) and a tendency to remission and recurrence." *See* On-line Medical Dictionary at *http://www.online-medical-dictionary.org* (Look Up "Bipolar Disorder") (last visited February 14, 2012).

the ALJ in determining at steps two and three which of the claimant's mental impairments are severe, and then determine the mental functional limitations on the claimant's ability to perform basic work activities. *See* 20 C.F.R. § 416.920a(c); SSR 96–8p, 1996 WL 374184, *4 (S.S.A. Jul. 2, 1996). Determination of the functional limitations is a "highly individualized" and fact specific determination. *Id.* Work related mental activities include the ability and aptitude to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. 20 C.F.R. § 416.921(b). The category of concentration, persistence or pace refers to the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. While limitations in this category may best be observed in work settings, limitations may also be assessed through clinical examination or psychological testing that evaluates short-term memory and/or the completion of tasks that must be finished within established time limits. *Id.* The category of social functioning refers to the "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." *Id.* In a work setting, social functioning involves interactions with the public, supervisors and co-workers. *Id.*

*Plaintiff's Relevant History*

Plaintiff's mental health issues, including diagnoses of ADHD, hyperactive behaviors, anger problems and substance abuse, go back to childhood. Plaintiff's mother testified Plaintiff obtained SSI child dis-ability benefits between age sixteen to eighteen because he was unable to be around people, especially when he became agitated (Tr. 27). In January 2001, Plaintiff told an intake counselor that he'd had mental health problems since age ten (Tr. 219). On February 10, 2002, Plaintiff told ACT personnel in the Adult Criminal Justice Services that he had a long history of mental health problems going back to childhood when he was diagnosed with hyperactive behaviors and prescribed Ritalin (Tr. 243). On discharge from a two month inpatient treatment program at the "Reality House" of the ACT Corporation, the counselor noted Plaintiff's history of mental issues dating back to childhood, his history of substance abuse and his history with ACT treatment since 2000 (Tr. 249).

As a young adult who had just seen his twentieth birthday, Plaintiff was involuntarily hospitalized under the Baker Act,[7] in December 2000 (Tr. 259–60, 62–64). Plaintiff remained at the ACT Corporation's Crisis Stabilization Unit for suicidal tendencies from December 24 through December 29, 2000. *Id.* In January 2001, after a recent arrest, Plaintiff voluntarily checked into a mental health facility for a month long stay to deal with his substance abuse problems (Tr. 214–16). The intake social worker noted Plaintiff's memory, thought process and judgment were impaired (Tr. 218). It was initially anticipated Plaintiff's length of treatment would be about sixteen weeks, but Plaintiff ultimately was discharged from the facility after a month, in unstable condition, because he could not meet all the treatment requirements (*see* Tr. 215, 224).

From December 6, 2001 to December 10, 2001, Plaintiff was again admitted for psychiatric treatment at the ACT Corpora-

---

**7.** *See* Fla. Stat. § 394.467 for discussion of involuntary inpatient placement under the Baker Act.

tion Crisis Stabilization Unit from the Flagler County Jail (Tr. 254–257). After an altercation with his father, during which time Plaintiff exhibited bizarre behavior, Plaintiff was arrested, transported to the jail, then transferred to the Crisis Stabilization Unit, where he received treatment until his discharge on December 10th back to the Flagler County Jail. *Id.*

On July 24, 2002, the record indicates Plaintiff was arrested on outstanding probation violation warrants, became upset over the possibility of spending more time in jail and took six Seroquel stating he wanted to kill himself (Tr. 229). Plaintiff was again Baker Acted and transported from the Flagler County Jail to the Flagler County Memorial Hospital, which then transferred him to the Halifax Medical Center. *Id.* Plaintiff was diagnosed with "[a]djustment disorder with mixed feature in partial remission. History of polysubstance abuse, rule out mood disorder" (Tr. 230). Plaintiff did not meet the criteria for admission, however, and was returned to jail (Tr. 229).

The record indicates Plaintiff continued mental health treatment with the ACT Corporation until sometime in mid-to-late 2002, when he apparently moved to Illinois (Tr. 250). Yet, on October 30, 2003, Plaintiff was again incarcerated in the Flagler County Jail, this time awaiting trial on a felony charge (*see* Tr. 27, 155). Upon a finding of guilty, Plaintiff was transferred from the jail to the Florida Department of Corrections (DOC) on May 27, 2005 (Tr.

158). Plaintiff remained in the custody of the DOC until his release on February 23, 2008. *Id.* During his term in prison, Plaintiff was placed on a "psych level three" ward and received mental counseling, but not prescription medication (Tr. 35–36, 304–22).

At the request of the Social Security Administration, Plaintiff Olsen was evaluated by Dr. Denise Verones, Ph.D., a licensed psychologist, on June 16, 2008 (Tr. 324–27). Dr. Verones diagnosed Plaintiff with an antisocial personality disorder and a bipolar disorder, mixed, without psychotic features (Tr. 326). Dr. Verones assessed a then-current GAF score of 50, which denotes serious symptoms.[8] *Id.* Dr. Verones determined Plaintiff's highest GAF score in the past year was 45. *Id.* She found Plaintiff's judgment was impaired and his insight into his own psychological functioning appeared to be poor. *Id.* Dr. Verones did not observe any unusual behaviors from Plaintiff and his affect was appropriate for the situation (Tr. 324–25). Reportedly, Plaintiff was not taking any medications at the time of the examination (Tr. 325). Regarding Plaintiff's functional ability, Dr. Verones stated:

> The claimant presents as an odd young man, who although not angry or psychotic at the time of the interview has had prior psychiatric hospitalizations, has been incarcerated and has been known to have psychotic episodes and violent outbursts. In the interview, it appeared he attempted to downplay all

---

8. The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0–100. A GAF score of 41–50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51–60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61–70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships." A GAF score of 71–80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM–IV, 32–34 (4th ed., American Psychiatric Assoc. 2000).

of these symptoms and incidents. Of concern is the fact that he is not receiving any treatment and is not taking any medication. I believe that he is at risk for further emotional breakdowns. Any work environment that would be suitable for him would need to be structured, and he would need to be under psychiatric care and compliant with a medication regimen. Under the present circumstances I do not see him being able to cope with the stress of a job (Tr. 327).

On June 24, 2008, Dr. Angeles Alvarez–Mullin, M.D., reviewed Plaintiff's records (Tr. 329–46). Based on the information presented, Dr. Alvarez–Mullin completed a Psychiatric Review Technique Form (PRTF) and assessed Plaintiff's mental residual functional capacity. *Id.* In assessing Plaintiff's mental RFC, Dr. Alvarez–Mullin found Plaintiff was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods of time, the ability to interact appropriately with the general public, the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and the ability to set realistic goals or make plans independently of others (Tr. 329–30). Taking these limitations into account, Dr. Alvarez–Mullin concluded Plaintiff appeared "capable of following simple and structured tasks in a routine work setting," in which Plaintiff would perform best if only "limited interaction with the public **and** co-workers is required" (Tr. 331) (emphasis added).

Medical records from December 2008 through November 2009 indicate Plaintiff sought mental health treatment, but continued to have mental health issues (Tr. 369–381). Plaintiff was placed on psychotropic medications, but continued to have problems with anxiety, mood swings and anger outbursts. *Id.*

Dr. Alan Harris, Ph.D., reviewed Plaintiff's records in December 2008 (Tr. 351–68). Like Dr. Alvarez–Mullin, Dr. Harris found Plaintiff was moderately limited in the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to set realistic goals or make plans independently of others (Tr. 365–66). However, Dr. Harris found Plaintiff was not significantly limited in the remaining mental RFC categories. *Id.*

*Legal Analysis*

■■ The RFC is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 416.945(a). The focus of this assessment is on the doctors' evaluations of the claimant's condition and the medical consequences thereof. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997). In evaluating a claimant's RFC, the ALJ is obliged to consider all of the claimant's impairments. *Id.* In this case, ALJ Murray ultimately found Olsen had the RFC to perform a full range of work at all exertional levels, but was restricted to unskilled work[9] and occasional contact with the public (Tr. 15).[10] Thus, occasional contact with the public, and possibly unskilled work, are the only

---

**9.** Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

**10.** ALJ Murray further found the assessed RFC was "supported by the State Agency's findings and the objective evidence" (Tr. 17). The State Agency reviewers were Dr. Alvarez–Mullin and Dr. Harris (Tr. 329–46, 351–68). The Court takes note, however, that Dr. Alvarez–Mullin found Plaintiff's mental limitations were considerably *more* restrictive than those the ALJ stated in the RFC (*compare* Tr. 329–330 *with* Tr. 15, finding no. 5).

restrictions related to Olsen's mental impairment.

■ In order to determine whether "occasional contact with the public" in unskilled work represents a satisfactory restriction on a particular plaintiff's ability to work, the ALJ must make a highly individualized inquiry that complies with the "function by function assessment" addressing the plaintiff's work related mental activities set forth in SSR 96–8p. In Mr. Olsen's case, the Court is not satisfied the ALJ made the function by function assessment that addresses Olsen's ability to perform work related activities.

■ While ALJ Murray found Plaintiff limited to unskilled work with only limited contact with the public, this limitation does not address the whole of Plaintiff's moderate difficulties in social functioning or his moderate difficulties in concentration, persistence or pace. Unskilled work has been found insufficient to account for difficulties in concentration, persistence or pace, unless the medical evidence clearly demonstrates otherwise. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180–81 (11th Cir.2011); *Richter v. Comm'r of Soc. Sec.*, 379 Fed.Appx. 959, 961 (11th Cir.2010); *also see Millhouse v. Astrue*, No. 8:08–CV–378–T–TGW, 2009 WL 763740, *3 (M.D.Fla. Mar. 23, 2009) (finding it was not apparent "that a person with a moderate limitation in concentration, persistence, or pace could adequately perform all types of unskilled sedentary work" and that in ".all events, a restriction to unskilled work *plainly does not* cover a moderate limitation in social functioning") (emphasis added).[11] Although the limited

contact with the public might account for Plaintiff's moderate difficulties in social functioning in part, it says nothing about difficulties in relationships with supervisors or co-workers. Evidence in the record suggests that Plaintiff has had difficulties in these relationships (*see, e.g.*, Tr. 37). The Regulations clearly state that these relationships fall under the umbrella of social functioning. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. Thus, the ALJ should have addressed these difficulties in assessing Plaintiff's RFC.

■ When, as in this case, the ALJ elects to use a vocational testimony to introduce independent evidence of the existence of work that a claimant could perform, the ALJ must pose a hypothetical question that encompasses all of the claimant's severe impairments in order for the VE's testimony to constitute substantial evidence. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir.1985).[12] "[W]hen the ALJ relies on the testimony of a VE, 'the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical posed to the VE' rather than the RFC simply cited in the ALJ's decision." *Brunson v. Astrue*, 850 F.Supp.2d 1293, 1303, No. 3:09–cv–984–J–MCR, 2011 WL 839366, *10 (M.D.Fla. Mar. 7, 2011) (quoting *Corbitt v. Astrue*, No. 3:07–CV–518–J–HTS, 2008 WL 1776574, at *3 (M.D.Fla. Apr. 17, 2008)).

At the May 26, 2010 administrative hearing, vocational expert Donna Mancini testified (Tr. 33–34, 40–42). The VE was present throughout the entire hearing, heard the Plaintiff's testimony, and was

11. Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36–2.

12. The ALJ, however, is not required to include in the hypothetical question the non-

severe impairments, or the limitations that were properly rejected as unsupported. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir.2004); *McSwain v. Bowen*, 814 F.2d 617, 619–20 (11th Cir.1987); *Loveless v. Massanari*, 136 F.Supp.2d 1245, 1250–51 (M.D.Ala.2001).

sworn in prior to giving her testimony (Tr. 26–43). ALJ Murray asked the VE, "Ms. Mancini, considering unskilled work only at any exertional level what sort of preclusion requirement of only occasional contact with the public have on that world of work, if you can speculate as to that?" (Tr. 40). To which the VE responded she could not speculate, but could give numbers for unskilled work in all demand levels. *Id.* By way of example, VE Mancini identified the unskilled jobs of a casing splitter in the meat processing industry, a steamer and a housekeeper (Tr. 40–41). The ALJ did not modify the hypothetical question to assume other limitations.

In this instance, ALJ Murray's assessment of Plaintiff's RFC is virtually identical to the restrictions stated in the hypothetical question posed to the VE (*see* Tr. 15, 40–41). While a hypothetical question setting out mental restrictions in elaborate detail may clarify RFC findings and provide the ALJ with substantial evidence in the VE's testimony to support his findings, such is not the case in this instance. *See Corbitt v. Astrue,* 2008 WL 1776574 at *3 (finding the detailed description of the plaintiff's mental restrictions in the hypothetical question overcame the vagueness in the ALJ's assessment of plaintiff's mental RFC).

In the recent case of *Winschel v. Comm'r of Soc. Sec.,* the Eleventh Circuit weighed in on the adequacy of hypothetical questions posed by administrative law judges to vocational experts when the Psychiatric Review Technique analysis reveals claimants have moderate limitations in an area of functioning. *See Winschel,* 631 F.3d at 1180–81. In *Winschel,* the court found limitations to simple, routine tasks or to unskilled work would not, standing alone, typically be sufficient to account for a plaintiff's moderate limitations in concentration, persistence or pace. *Id.* at 1180. In *Richter v. Comm'r of Soc. Sec.,* the

court found the unskilled work restriction was not adequate to account for the plaintiff's moderate difficulties in concentration, persistence or pace. *See Richter,* 379 Fed. Appx. at 959–62. Similarly, in *Brunson v. Astrue,* the court found limiting the plaintiff to unskilled jobs without unusual stress did not address the impact of the plaintiff's moderate limitations in concentration, persistence, or pace on his ability to perform work-related activities. See *Brunson,* 850 F.Supp.2d at 1300–04, 2011 WL 839366, at *8–12.

Plaintiff argues the ALJ failed to apply the correct legal standards to Mr. Olsen's limitation in concentration, persistence or pace in the hypothetical question asked of the VE (Doc. # 15 at 10–11). As the cited case law illustrates, Plaintiff is correct. It is questionable whether the medical evidence in Olsen's record clearly demonstrates that Olsen can engage in all unskilled work with occasional public contact, despite his limitations. *See Winschel,* 631 F.3d at 1180. Moreover, it is unclear whether Plaintiff's RFC as assessed by the ALJ adequately accounts for his severe mental impairment.

 This is a fact specific inquiry in which the medical evidence may or may not demonstrate whether generic limitations, such as to unskilled work or to jobs without unusual stress, for example, may sufficiently account for the plaintiff's mental impairments. *Cannon v. Astrue,* No. 3:10–cv–243–J–TEM, 2011 WL 4346566 (M.D.Fla. Sept. 16, 2011). However, it is for the Commissioner, not the courts, to weigh the medical evidence and make the necessary findings. *See Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir.2005) (stating a court may not decide facts anew, may not reweigh the evidence, and may not substitute its own judgment for that of the Commissioner) (internal citation omitted).

In this case, similar to *Winschel,* the ALJ did not indicate whether medical evi-

dence supported finding Plaintiff could perform basic work activities in spite of the moderate limitations in two areas of functioning, nor did the ALJ implicitly account for the limitations in his hypothetical to the vocational expert by instructing the VE to fully credit any particular findings or medical evidence related to Plaintiff's severe mental impairment. *See Winschel,* 631 F.3d at 1181. Thus, ALJ Murray failed to make findings sufficient for the Court to ascertain whether the restriction to unskilled work limited by occasional contact with the public, as stated in the RFC and the hypothetical question, adequately encompassed Plaintiff's severe mental impairment. Therefore, the Court does not find the ALJ's decision is fully supported by substantial evidence and remand is necessary to correct this flaw.[13]

In *Fellows v. Astrue,* No. 1:10CV701–SRW, 2011 WL 4005239 (M.D.Ala. Sept. 8, 2011), the ALJ addressed the plaintiff's moderate difficulties in concentration, persistence or pace in the hypothetical question posed to the VE, but failed to address plaintiff's moderate difficulties in social functioning. The *Fellows* court found this omission was not harmless error and remanded the case to the Commissioner for further proceedings. *Id.* at *3–4. Here, the ALJ failed to adequately address Plaintiff Olsen's moderate limitations in either the social functioning and the concentration, persistence or pace domains. Such error is not harmless.

## CONCLUSION

For the reasons stated herein, it is respectfully recommended the decision of the Commissioner be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and the case is **REMANDED** for additional proceedings consistent with this opinion. On remand, the undersigned would suggest the Commissioner be instructed to: (1) reconsider the record as a whole; (2) reassess Plaintiff's residual functional capacity in light of this opinion and the record evidence; (3) pose a hypothetical question to the VE that specifically accounts for Plaintiff's mental limitations; and, (4) conduct any other proceedings deemed appropriate.

Plaintiff Olsen is cautioned, however, that this opinion does not suggest he is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Olsen is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart,* 357 F.3d 1232, 1244 (11th Cir. 2004).

---

13. Moreover, the Court finds the ALJ's reasoning that Plaintiff can perform work within the ascertained RFC limits is flawed. ALJ Murray finds, "[t]he evidence of good behavior and minimal problems for the 5 years [Olsen] was incarcerated, along with [Olsen's] intermittent noncompliance with his medication from 2008 to present, suggests that [Olsen] can perform work within the limitations as outlined in the residual functional capacity ..." (Tr. 17). It is wholly unclear that because Olsen functioned adequately without medication while incarcerated he would have the capacity to function well in the workplace in free society. A highly structured, institutionalized environment, in which individual choices are severely limited, such as that found in prisons, simply cannot be equated with the environments typically found in the public workplace. Furthermore, the Court questions how an individual's noncompliance with prescribed medication can contribute to that individual's ability to perform work related tasks. The undersigned echoes the words of the Honorable Thomas G. Wilson, United States Magistrate Judge, as stated in *Millhouse v. Astrue,* 2009 WL 763740 at *2, "There is clearly a disconnect ..." in the ALJ's findings.