[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12414
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-00200-WTH-GRJ

JAMES H. MABREY,

Plaintiff-Appellant,

versus

ACTING COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(February 2, 2018)

Before MARCUS, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

James H. Mabrey appeals the district court's order affirming the administrative law judge's ("ALJ") denial of disability insurance benefits and supplemental security income, under 42 U.S.C. §§ 405(g), 1383(c)(3). On appeal,

Mabrey argues that: (1) the ALJ erred in failing to order a new IQ test to assess Mabrey's disability since his school records, which listed his IQ as 57, plus his history as a day laborer triggered the ALJ's duty to fully and fairly develop the record to decide whether Mabrey had a qualifying impairment; (2) the ALJ erred in finding he had past relevant work as a motor vehicle dispatcher and construction worker; and (3) the ALJ erred in mechanically applying the Medical-Vocational Guidelines (the "grids") to find that Mabrey was not disabled because the grids would have directed a finding of disability five months later, when Mabrey would have reached the advanced age category. After thorough review, we affirm.

We review de novo the legal principles upon which the ALJ relied, but are limited to assessing whether the ALJ's resulting decision is supported by substantial evidence. Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1266–67 (11th Cir. 2015). In social security cases where the ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision. Id. at 1267. Our review is the same as that of the district court, meaning we neither defer to nor consider any errors in the district court's opinion. Id. Issues not raised in an appellate brief are deemed abandoned. Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc., 830 F.3d 1242, 1256 (11th Cir. 2016). Irrelevant errors are harmless and do not require reversal or remand. Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).

Under the substantial evidence standard, we will affirm the ALJ's decision if there exists relevant evidence that a reasonable person would accept as adequate to support a conclusion.  Henry, 802 F.3d at 1267.  We will not decide the facts anew, make credibility determinations, or re-weigh the evidence.  Id.  In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole.  Id.  We must affirm the ALJ's decision if it is supported by substantial evidence, even if the evidence preponderates against the ALJ's findings.  Id.

First, we are unpersuaded by Mabrey's claim that the ALJ erred in failing to order Mabrey a new IQ test to assess his disability.  An ALJ uses a five-step, sequential evaluation process to decide whether a claimant is disabled, examining whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment or combination of impairments; (3) the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, the claimant can perform any of his past relevant work despite the impairment; and (5) there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011).

The Listing of Impairments describes, for each major body system, the impairments that are considered severe enough to prevent a person from doing any

gainful activity.  Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002).  To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the Listing's specific criteria and duration requirement.  Id.  To "equal" a Listing, the medical findings must be at least equal in severity and duration to the listed findings.  Id.

Under the regulations in effect when the ALJ issued her opinion, the § 12.05 mental-retardation listing required a showing that the claimant: (1) had significantly subaverage general intellectual functioning; (2) had deficits in adaptive behavior; and (3) had manifested deficits in adaptive behavior before age 22.  Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(A)(3), 12.05 (2013).  Listing 12.05B further required a "valid verbal, performance, or full scale IQ of 59 or less."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B (2013); id. § 12.00A (noting that meeting the mental-retardation listing required a showing that the impairment satisfied both the diagnostic description in the introductory paragraph and one of the criteria set out in subsections A, B, C, and D); id. § 12.00D(6)(b) (noting that "[s]tandardized intelligence test results [were] essential to the adjudication of all cases of mental retardation that [were] not covered under the provisions of 12.05A").  An IQ test is valid if it is a "test[] of general intelligence that [has] a mean of 100 and a standard deviation of 15; e.g., the Wechsler series."  20 C.F.R. Pt. 404, Subpt. P, App. 1, §

12.00D(6)(b) (2013). Generally, the claimant meets the criteria for presumptive disability under section 12.05B when the claimant presents a valid IQ score of 59 or less. Crayton, 120 F.3d at 1219–20. Because IQ remains fairly constant throughout life, an IQ score need not be obtained before the age of 22 to invoke the rebuttable presumption that the claimant manifested deficits in adaptive behavior before age 22. Hodges v. Barnhart, 276 F.3d 1265, 1268−69 (11th Cir. 2001). However, a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).

The ALJ has a basic duty to develop a full and fair record, which requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." Henry, 802 F.3d at 1267 (quotation omitted). Remand for further factual development is proper when the record reveals evidentiary gaps that result in unfairness or clear prejudice. Id. But an ALJ is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007). Moreover, since the claimant bears the burden of proving he is disabled, a claimant is not entitled to relief on a claim that the ALJ failed to develop the record when the ALJ requested evidence that the claimant failed to provide. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

Here, the ALJ did not err in failing to further develop the record on Mabrey's alleged intellectual deficits. For starters, when the ALJ attempted to expand the record, Mabrey did not carry his burden to submit the documentary evidence the ALJ requested. Id. Specifically, the ALJ asked Mabrey whether he was in special education classes in school and whether the "California" test listed on his transcript was a valid IQ test, and then told Mabrey to file additional documentation after the hearing to support his answers. When Mabrey filed additional education records, they did not bear out his claims that he had taken special education classes for one year or that his California test qualified as a valid IQ test with an appropriate mean and standard deviation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D(6)(b) (2013). Indeed, Mabrey admits his California test was not an IQ test, much less a valid IQ test. Thus, Mabrey did not carry his burden to establish an intellectual disability, despite the ALJ's attempt to develop the record.

In addition, the record contained sufficient evidence for the ALJ to make an informed determination that Mabrey did not suffer from an intellectual disability, making further record development unnecessary. Ingram, 496 F.3d at 1269. The vocational expert testified that based on Mabrey's description of his prior work experience, Mabrey had previously performed semiskilled work as a construction worker and skilled work as a motor-vehicle dispatcher. Mabrey testified that he had passed a written driver's test, had been able to drive his friend to the store, and

could perform a variety of tasks around the house without assistance. And no medical records indicated that Mabrey might suffer from an intellectual disability. Mabrey points to one record indicating that he had less-than-perfect memory and was unable to spell "world" backwards, but that evidence does not suggest that he had a diagnosable intellectual deficiency. Rather, the relevant evidence about Mabrey's daily activities, work history, and medical history supported the IJ's reasonable conclusion that Mabrey did not have an IQ of 57, and was more than sufficient for the ALJ to make an informed determination about Mabrey's alleged intellectual disability without further developing the record. Ingram, 496 F.3d at 1269. Moreover, even if the ALJ erred by concluding that an IQ score obtained during adulthood was not relevant to the disability analysis, this error was harmless because the record as a whole supported the ALJ's conclusion that Mabrey did not have an intellectual disability. Diorio, 721 F.2d at 728.

We are also unconvinced by Mabrey's claim that the ALJ erred in assessing his past relevant work. Where there is conflict between the Dictionary of Occupational Titles ("DOT") and a vocational expert's testimony, an ALJ may rely solely on a vocational expert's testimony. See Jones v. Apfel, 190 F.3d 1224, 1226, 1229–30 (11th Cir. 1999).

In this case, the ALJ's conclusions about Mabrey's previous construction and motor-vehicle dispatcher jobs were irrelevant because the ALJ concluded that

he could not perform any past relevant work. Because the record reveals that the ALJ concluded that Mabrey could not perform any past relevant work, it squarely contradicts Mabrey's claim that the ALJ had found that he had past relevant work as a motor-vehicle dispatcher. Accordingly, any error on this point would have been harmless and does not require reversal or remand. Diorio, 721 F.2d at 728.

Similarly, we reject Mabrey's argument that the ALJ erred in mechanically applying the "grids" to find that Mabrey was not disabled. As we've said, the final step of the sequential analysis asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given his residual functional capacity, age, education, and work experience. Winschel, 631 F.3d at 1178. An ALJ may determine whether a claimant has the ability to adjust to other work in the national economy by either applying the grids or using a vocational expert. Phillips v. Barnhart, 357 F.3d 1232, 1239–40 (11th Cir. 2004). The grids provide an alternate path to qualify for disability benefits when an applicant's impairments do not meet the requirements of the listed qualifying impairments. Id. at 1240. They allow adjudicators to consider factors like age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience in assessing a disability. Id. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of the factors yield a statutorily-required finding of "Disabled" or "Not Disabled." Id.

8

Where the ALJ has applied the age grids in a mechanical fashion, a claimant should be given an opportunity to make a proffer of evidence on his ability to adapt. Patterson v. Bowen, 799 F.2d 1455, 1458–59 (11th Cir. 1986). If he makes a proffer of substantial evidence that an ALJ could find credible and tending to show that the claimant's ability to adapt to a new work environment is less than the level established under the grids for persons his age, a court is required to remand the case for reconsideration of the age/ability-to-adapt issue. Id. If, on the other hand, the claimant does not make such a proffer, the ALJ's mechanistic use of the age grids would be harmless error and there would be no need to remand. Id.

Here, the record belies Mabrey's claim that the ALJ mechanically applied the grids. The ALJ appropriately relied on a vocational expert's testimony, rather than the grids, in concluding that Mabrey could make a successful adjustment to other work that existed in the national economy. Phillips, 357 F.3d at 1239–40. Further, even if Mabrey's alleged IQ scores constituted a factual proffer that a higher age category applied, the ALJ appropriately concluded, as we've already held, that other record evidence conflicted with Mabrey's IQ allegations. Accordingly, any error in applying the grids would have been irrelevant and harmless. Diorio, 721 F.2d at 728; Patterson, 799 F.2d at 1458–59.

**AFFIRMED**.

9